GERTRUDE F. MORTON, by WM. C. RICHARDSON, her Curator, Respondent, v. SUPREME COUNCIL OF THE ROYAL LEAGUE, a Corporation, Appellant.

St. Louis Court of Appeals, March 3, 1903.

1. **Association, Beneficiary: BENEFIT CERTIFICATE: SUICIDE DOES NOT INVALIDATE POLICY: PUBLIC POLICY, INEFFECTIVE.** Where a beneficial association had so interpreted its contracts as to render itself liable thereunder, though the certificate-holder committed suicide while sane, by providing that the company should not be liable if the insured committed suicide within two years after the issuance of the certificate and by thereafter passing by-laws that if insured committed suicide, his beneficiary should be entitled to only one-half of the face of the policy, it could not be contended that a certificate was invalidated by suicide on the ground of public policy.

2. ———: **STATUTE OF ANOTHER STATE MUST BE PLEADED: COMMON LAW CONTROLS.** Where in an action on a policy made in Illinois and subject to its laws, such laws relating to the defense urged were not pleaded, defendant's liability must be determined according to the common law.

3. ———: ———: **USAGES OF SOCIETY: BY-LAWS AS AMENDED NOT BINDING, WHEN: ONE-HALF OF BENEFIT.** A benefit certificate bound insured to comply with all the laws and usages of the society then in force, or which might be thereafter adopted by the order. At the time the certificate was issued one of the by-laws provided that if any member committed suicide within two years, defendants should be liable for one-half of the face of the policy, and thereafter such by-law was amended at various times until it finally provided that if any member should die by suicide, his beneficiaries should only receive one-half of the

benefit of the certificate: *Held*, that the provision of the certificate requiring compliance with future regulations related only to such regulations as affected the member's duties as a member, and that such member was therefore not bound by the by-law as amended.

4. ———: ———: INTERVENTION BY CURATORS: TOO LATE AFTER JUDGMENT. Motions to intervene in an action and thereby be substituted as curator for the plaintiff, not filed until after judgment, were properly overruled.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Douglas*, Judge.

AFFIRMED.

### STATEMENT.

Plaintiff's petition states that William C. Richardson is public administrator and ex-officio public curator of the city of St. Louis in charge of the estate of Gertrude F. Morton, a minor; that on June 26, 1893, the appellant, a corporation, organized under the laws of the State of Illinois, insured the life of Charles Morton for the benefit of said Gertrude in the sum of four thousand dollars, the certificate of insurance being pleaded in full; that said Charles Morton died May 6, 1900, having complied with the regulations governing the appellant association and with his certificate in full force; that appellant refused to pay the amount of the certificate or any part thereof; wherefore judgment was demanded for the same.

The answer was as follows (omitting caption):

"Now again comes defendant and by leave of court first had and obtained, files this its second amended answer to plaintiff's petition, and denies each and every allegation thereof as therein stated.

"Defendant further answering says that it is a corporation, duly incorporated under the laws of the State of Illinois as a fraternal beneficial association, order or society; that now, at and prior to the times hereinafter mentioned, it has operated and still oper-

ates as such under the laws of the States of Illinois, Missouri and other States, and that it is duly licensed to operate in said States as a fraternal beneficial association as in the laws of said States defined; that in conformity with the laws of the State of Illinois pertaining to fraternal beneficial associations, and as in said laws of the State of Illinois provided and defined, the defendant association was and is formed, organized and carried on for the sole benefit of its members and beneficiaries and not for profit; that it has, and always has had, a lodge system with ritualistic form of work and a representative form of government; that it has made and still makes provision for the payment of benefits, in case of death, out of a fund derived from assessments collected from its members; that its death benefits are payable only to the families, heirs, blood relatives, affianced husband or affianced wife of, or to persons dependent upon the member; that it operates and conducts and always has operated and conducted its business as such fraternal beneficial association, order or society, under the provisions of the laws of the State of Illinois as hereinbefore defined and set forth; that it does not do and never has done, what is known as the business of life insurance anywhere, or at any time, and is not a life insurance corporation, and that its principal office now and always has been located in the city of Chicago and State of Illinois.

"Defendant further answering says that it operates and conducts its business through subordinate bodies known as subordinate councils, and that its subordinate councils under defendant's constitution and by-laws are authorized to admit acceptable persons to beneficiary membership; that each member of the order has a voice and vote in the government and management of the order, through duly elected representatives as provided by its constitution and by-laws, duly enacted by defendant, through such elected representatives, as members of its supreme council or governing body.

"Defendant further answering, admits that one Charles Morton, while a resident of the city of Chicago, State of Illinois, and in said city and State, duly presented his written application for membership to one of defendant's subordinate councils, known as Bankers' Council No. 56, located at Chicago in the State of Illinois, and that in said application, duly signed by him, and as a condition precedent to being made a beneficiary member of the defendant association or order, he agreed in said application to comply with all its laws, rules and usages then in force or which might thereafter be adopted by the defendant order; that thereupon he was duly initiated in said Bankers' Council and a benefit certificate of defendant, No. 4973, was issued and delivered in said city and State aforesaid to said Charles Morton on June 19, A. D. 1889, in which Pauline E. C. Morton, wife of the said Charles Morton, was made the beneficiary.

" Defendant further states that the said benefit certificate No. 4973, issued as aforesaid, was in form, substance and language identical with the benefit certificate set forth in plaintiff's petition, saving and excepting the date, number and the name of the beneficiary, and contained a clause therein reading as follows: 'Upon condition that the said member [meaning Charles Morton] complies, in future, with the laws, rules and regulations now governing the said council and fund, or that may hereafter be enacted by the supreme council to govern said council and fund, all of which are also made a part and parcel of this contract;' that said benefit certificate was duly accepted in writing by said Charles Morton, on the face thereof, in words as follows: 'I accept this certificate on the conditions named therein,' and was duly evidenced by his signature thereto attached.

"Defendant further says that it was and is provided in its constitution and by laws that a member may at any time surrender his benefit certificate and change

his beneficiary, and that in pursuance of said provision of defendant's constitution and by-laws, and with the consent of defendant, the said Charles Morton, on June 26, 1893, while still a resident of said city of Chicago, and a member of said Bankers' Council, surrendered the original benefit certificate as aforesaid, and in writing on the back of the said surrendered certificate, directed a new benefit certificate to be issued and delivered to him, payable to Gertrude F. Morton, related to him as his daughter; that in said benefit certificate, as issued and delivered by defendant to said Charles Morton in the city of Chicago, State of Illinois, it was and is provided, among other things, as a part and parcel of the contract therein made with the said Charles Morton, as an express 'condition that the said member complies in future with the laws, rules and regulations now governing the said council and fund, or that may thereafter be enacted by the supreme council to govern such council and fund, all of which are also made a part of this contract;' that the fund therein referred to is the widows' and orphans' benefit fund, which is obtained by defendant by levying and collecting assessments therefor from the beneficiary members of defendant's association as are needed from time to time, to pay its losses by death, etc., and out of which payments to beneficiaries are made, as provided in the constitution and by-laws of defendant; that the said Charles Morton, in writing, on the face of such certificate, by his signature thereto subscribed, accepted the said certificate on the conditions named therein, as in plaintiff's petition set forth and stated.

"Defendant further answering says, that in the exercise of its powers, through its supreme council duly and regularly assembled in the city of Chicago, State of Illinois, on March 13, 1893, and on March 28, 1893, it adopted a by-law which read as follows: 'If any member shall, within two years subsequent to his admission into this order, die by his own act or hand, sane

or insane, his beneficiary or beneficiaries shall receive only one-half of the face value of his certificate;' that said by-law was promulgated to the membership of defendant's association and went into force and effect April 1, 1893.

"Defendant further answering says that at a subsequent session of its supreme council, duly and regularly assembled in the city of Chicago, State of Illinois, on April 27, 1895, the said by-law as aforesaid, was amended by striking out the word 'two' and inserting in lieu thereof the word 'five' so that said by-law as amended, read as follows: 'If any member shall, within five years subsequent to his admission into this order, die by his own act or hand, sane or insane, his beneficiary or beneficiaries shall receive only one-half of the face value of his certificate;' that said by-law was promulgated to the membership of defendant's association and went into force and effect May 1, 1895.

"Defendant further answering says, that at a subsequent session of its supreme council, duly and regularly assembled in the city of Chicago, State of Illinois, on June 17, 1897, the said by-law as aforesaid (as adopted April 27, 1895) was amended to read as follows: 'If any member shall die by his own act or hand, sane or insane, his beneficiary or beneficiaries shall receive only one-half the face value of his benefit certificate;' that said by-law was promulgated to the membership of defendant's association and went into force and effect July 1, 1897.

"Defendant further answering says, that at a subsequent session of its supreme council, duly and regularly assembled in the city of Chicago, State of Illinois, on April 11, 1899, the said by-law as aforesaid (as adopted June 17, 1897) was amended by a unanimous vote to read as follows: "If any member, whether admitted heretofore or hereafter shall die by his own act or hand, sane or insane, his beneficiary or beneficiaries.

shall receive only one-half of the face value of his benefit certificate;' that said by-law was promulgated to the membership of defendant's association and went into force and effect July 1, 1899, and was in force and effect at the time of the death of the said Charles Morton; that said by-law is now and was, at its adoption, known as law 2, section 4, 'Laws of the Royal League,' and that said by-law forms part and parcel of its contract with said Charles Morton, and was in force and effect during said Charles Morton's membership in the defendant society, and at the time of his death.

"Defendant further answering says that said Charles Morton up to the date of his death continued his membership in said Bankers' Council in the city of Chicago, in the State of Illinois, and that all of his monthly assessments and his local council dues were paid by him in the said city of Chicago to the officers of said Bankers' Council in Chicago and by said officers paid over to defendant herein in said city.

"Defendant files herewith and attaches hereto a complete copy of its constitution and by-laws, as were in effect at the time of the death of the said Charles Morton, as a part and parcel of its answer herein to the same extent and with as full and complete effect as if they were fully set out in the body of this answer, and marks the same 'Exhibit A.'

"Defendant further answering says that the said Charles Morton, in the city of St. Louis, State of Missouri, on or about the sixth or seventh day of May, 1900, died by his own hand, and committed suicide by poisoning himself; that in so causing his own death the said Charles Morton understood and was conscious of the physical nature and consequences of his act and intended to destroy his life. The defendant under its contract, is therefore only liable to the beneficiary, the said Gertrude F. Morton, in the sum of two thousand dollars which it has always been ready and still stands ready to pay, and for which amount, two thousand dol-

lars, it consents that judgment be entered up against it.

"Wherefore having fully answered and consenting that a judgment of two thousand dollars be entered up against it, defendant prays that upon such payment and the payment of costs up to date, it may stand discharged from further proceedings, costs or expenses herein."

A motion for judgment on the pleadings for the face value of the certificate was filed by the respondent, sustained by the court and an appeal taken. After judgment had been entered, certain motions to intervene and be substituted as curator were filed by strangers to the action who claimed the right as against Richardson to represent Gertrude F. Morton.

*Millard R. Powers* and *Louis A. Steber* for appellant.

(1) The fact of Charles Morton's death by suicide is, of itself, a good defense, even if it were not stipulated in the benefit certificate. Ritter v. Life Ins. Co., 169 U. S. 139; Hopkins v. Northwestern, etc., Co., 94 Fed. 729. (2) In a suicide case, life is terminated by a risk against which the company has not insured; and the fact that the beneficiary is a person other than the insured himself can not enlarge the scope of the contract, nor authorize a recovery thereon. Hopkins v. Northwestern, etc., Co., supra; Supreme Lodge, etc. v. Kutscher, 179 Ill. 340. "The extinction of life by disease, or by accident; not suicide, voluntary and intentional, by the assured, while in his senses, is the risk intended; and it is not intended that, without the hazard of loss, the assured may safely commit crime." Supreme Commandery v. Ainsworth, 71 Ala. 436. (3) It is now well settled law that where a fraternal beneficial society issues a benefit certificate expressed to be "subject to the laws of the order then in force or thereafter to be enacted," and subsequently enacts a by-law which provides that such a certificate shall be

forfeited if the member, whether sane or insane, shall take his own life, such certificate becomes forfeited upon the suicide of such member. Supreme Commandery v. Ainsworth, supra. (4) The defendant society (appellant) had the right, under its contract, to amend its by-laws, so as to pay one-half of the face of the certificate, in the event of the death of a member by suicide. The right of amendment in by-laws, in such cases, has been well considered in Fullenwider v. Royal League, 180 Ill. 621; Fullenwider v. Royal League, 73 Ill. App. 321; Supreme Lodge, etc., v. Clarke, 88 Ill. App. 600, 606; Supreme Lodge, etc., v. Knight, 117 Ind. 489; Supreme Council, etc., v. Adams, 44 Atl. (N. H.) 380; Fugure v. Mut. Society, 46 Vt. 362; Dornes v. Supreme Lodge, 75 Miss. 466, 481; Duer v. Supreme Council, 21 Tex. Civ. App. 493; Stohr v. Society, 82 Cal. 557. (5) The beneficiary herein, not being a party to the original contract, can not complain of the amendment of the defendant's laws as to suicide. Duer v. Supreme Council, 21 Tex. Civ. App. 493; Byrnes v. Casey, 70 Tex. 247; Masonic, etc., Society v. Burkhart, 110 Ind. 189; Hysinger v. Supreme Lodge, 42 Mo. App. 627, 635; Supreme Tent, etc., v. Hammers, 81 Ill. App. 560; Chambers v. Supreme Tent, etc., 200 Pa. St. 244. (6) Benefit certificates are issued under the fraternal beneficial association laws of Missouri. Such societies are "exempt from the provisions of the insurance laws of this State." R. S. 1899, sec. 1408.; Sparks v. Knight Templars, etc., Co., 61 Mo. App. 109; Hanford v. Mass. Ben. Ass'n, 122 Mo. 50; Theobald v. Supreme Lodge, 59 Mo. App. 87; Haynie v. Knights, etc., Co., 139 Mo. 416. (7) The law of the place where the contract is made, and not where the action is brought, is to govern in enforcing and expounding the contract, unless the parties had a view to its being executed elsewhere, in which case it is to be governed according to the laws of the place where it is executed. Andrews v. Pond, 38 U. S. (13 Pet.) 65; Bank of Augusta v. Earle, 38

U. S. (13 Pet.) 519; Liverpool Steam Co. v. Phoenix Ins. Co., 129 U. S. 397, 453; U. S. v. North Carolina, 136 U. S. 211, 222; Scudder v. Union Nat'l. Bank, 91 U. S. 406; Hysinger v. Supreme Lodge, 42 Mo. App. 627, 637; Bouvier's Law Dictionary, "*Lex Loci;*" Anderson's Dictionary of Law, at p. 775, "Place of Contract."

*Frederick H. Bacon* and *Wm. R. Gentry* for respondent.

(1) The contract in question is one of life insurance, as has been settled by an overwhelming array of authorities. We need only cite State v. Merchants' Exchange, 72 Mo. 146; National Union v. Marlow, 74 Fed. Rep. 775; Commonwealth v. Weatherby, 105 Mass. 149. (2) Unless an organization like this can show an exemption by statute from the general rules applicable to life insurance companies, its contract will be governed by the general rules applicable to life insurance companies. Kern v. Supreme Council, 167 Mo. 471; 67 S. W. 252; Smith v. Supreme Lodge, 83 Mo. App. 512, 526; Hobbs v. Iowa Ben. Assn., 82 Iowa 107; Startling v. Supreme Council, 108 Mich. 140; Supreme Council v. Getz, 112 U. S. C. C. A. Fed. 119; and Gaut v. Supreme Council, 64 S. W. (Tenn.) 1070. These views are also supported by the recent case of Peterson v. Gibson, 191 Ill. 365; 61 N. E. 127. (3) The same principle has also been laid down by the Supreme Court of North Carolina in two cases which differ as to their facts, yet involve the same principle: Bragaw v. Supreme Lodge, 128 N. C. 354; 38 S. E. 905; Strauss v. Life Assn., 128 N. C. 465; 39 S. E. 55; Wist v. Grand Lodge, 22 Oregon 271; 29 Pac. 610; Deuble v. Grand Lodge, etc., 66 App. Div. 323; 72 N. Y. Supp. 755.

GOODE, J.—The principal controversy in this case is as to whether the suicide by-law of the association, which was in force at the time of Charles Morton's

death, constitutes a defense to plaintiff's cause of action; but before discussing that quesion it is necessary to consider the proposition advanced by the defendant's counsel that an insurance policy payable to the insured or his estate, or one in a fraternal order (in which the denominated beneficiary had no vested interest) is forfeited by the suicide of the insured while sane, whether the policy so provides or not. That rule, we admit, is supported by much authority as being one phase of the doctrine that a loss on any contract, caused by some act of a party to it which was a violation of the criminal law or inimical to the public weal, affords no right of action; as where a loss on a policy covering property is due to the incendiarism of the owner, or the holder of a life policy payable to his estate is lawfully killed in preventing him from committing a felony. Ritter v. Ins. Co., 169 U. S. 139. There is reason for some applications of the rule, but extending it so as to compass the avoidance of life insurance contracts in the event of suicide, is less obviously reasonable than when it is used to defeat a recovery for the loss of property intentionally burned by the owner; and this is true in several aspects of the matter. If companies could be made to pay for incendiary losses on property, the crime of incendiarism would be encouraged to a far greater extent than self-destruction would be by leaving life insurance valid after suicide, both because of the innate love of life and because most life policies are vested in the beneficiaries and hence good, notwithstanding the suicide of the insured, in the absence of a special proviso to the contrary. Then it is to be remembered that insurance companies dictate their policies and usually include all the exceptions to liability they desire to reserve and that the law will permit. Moreover, self-destruction always indicates, if not insanity, at least an irresponsible state of mind, and may well be considered part of the risk assumed, if not specially excluded. For this reason the doctrine in

question is not welcomed by all courts and seemingly not by those of this State, which hold that a company doing a life insurance business takes a risk on an insured person's life subject to all his human passions and frailties. Admr. v. Ins. Co., 19 Mo. 506; McDonald v. Triple Alliance, 57 Mo. App. (St. L.) 87.

But whatever merit the rule may possess, we need not concern ourselves about it in the present case, for it is clear the defendant association has interpreted its contracts so as to make it inapplicable to them. The by-laws enacted on the subject of suicide import that the company understood its policies or certificates had bound it theretofore to pay stipulated benefits in full, notwithstanding the death of a member by his own hand. Either this is true, or we are driven to the position which no one will contend for, that the society meant to create instead of diminish a liability on its part by those by-laws. Their wording shows too that the company understood its previous obligation was to pay in case of suicide; for they read, that in the event of the suicide of a member, his beneficiary shall receive only one-half of the face value of the certificate, and the logical meaning of such language is that previously the beneficiary was entitled to the full face value. The company itself having construed its contracts so as to leave no doubt about what it intended to insure against, that construction should be adopted, as it contravenes no policy of the law. Patterson v. Camden, 25 Mo. 13; Brewing Co. v. Water Works Co., 34 Mo. App. (K. C.) 49; Rose v. Carbonating Co., 60 Mo. App. (St. L.) 28; Union Depot Co. v. Railroad, 131 Mo. 291; Williams v. Railroad, 153 Mo. 487; Wetmore v. Crouch, 150 Mo. 671. We hold, therefore, that the doctrine above adverted to has no bearing on the determination of this controversy.

This being an Illinois contract, particular reliance is placed on the decisions of the courts of last resort of that State as making by-laws like those pleaded in the

answer applicable to contracts for fraternal insurance entered into prior to their enactment, when the certificate of insurance provides that the insuring party shall be bound by future by-laws. Those decisions we have consulted and find some of them support the position of counsel for the defendant. Supreme Lodge v. Trebbe, 179 Ill. 348; Fullenwider v. Royal League, 180 Ill. 626; Supreme Tent v. Hammers, 81 Ill. App. 560; Supreme Legion v. Clark, 88 Ill. App. 600. There are later decisions of the Supreme Court of that State which cast some doubt on whether a certificate worded as Morton's was would be subject to the effect of a subsequently adopted by-law reducing the benefit if the member committed suicide; for his certificate differs in its language from the one construed in Supreme Lodge v. Trebbe, supra, in that it bound Morton to *comply* with future by-laws, whereas in the Trebbe case the words were that the *contract should be controlled* by future laws and regulations. Peterson v. Gilson, 191 Ill. 365; Covenant Assn. v. Kentner, 188 Ill. 431.

But attention to the answer will disclose that the defendant has failed to plead the laws of Illinois on this subject. The answer several times avers the defendant is an Illinois corporation operating under the laws of said States and other States, including Missouri, and duly licensed to operate in said States as a fraternal association. Further, that in accordance with the laws of Illinois, it is organized for the sole benefit of its members and not for profit, has a lodge system, a ritual, and a representative form of government, makes provision for the payment of benefits in case of death only to the insured's family or persons dependent on him and operates and conducts its business under the laws of the State of Illinois as a fraternal society, never having done business anywhere or at any time as a life insurance corporation. The answer also shows the contract of insurance in controversy was an Illinois contract made and performed in that State.

But nowhere is reference made to the laws of Illinois or any decisions of its courts concerning the effect of a by-law such as is pleaded in the answer on prior contracts of insurance. The motion for judgment on the pleadings was in the nature of a demurrer to the answer, and we recognize the rule that liberal treatment must be accorded the allegations of the answer and whatever construction most favorable to the defendant they are susceptible of given to them. But it is also true that if there is an entire absence of averment concerning the law of Illinois on the point in hand, it must be decided without particular reference to that law.

The senseless rule of practice still obtains that where an action or defense rests on a foreign law, even if it be one of a sister State of the Union, such law is a fact which a court can not take notice of unless it is pleaded and proven. Garrett v. Conklin, 52 Mo. App. (K. C.) 654; Banchor v. Gregory, 9 Mo. App. (St. L.) 102; Thatcher v. Mars, 11 N. Y. 437; Finney v. Finney, 17 How. Pr. 197; Bean v. Briggs, 4 Iowa 469. The Federal courts have long since rid themselves of this technicality, which forces State courts to control contracts made in another State by the general doctrines of the common law when they know perfectly well the contracts were entered into with reference to other laws, and know, too, or can easily ascertain, what those laws are. It is well to require proof of foreign laws which are neither familiar nor accessible, like those of European or Asiatic States; but there can be no good reason for forbidding courts to take judicial notice of the laws of the States of this Union. The rule is the other way and we must be governed by it; and, as the answer contains no averment in regard to the decisions of the courts of Illinois on the crucial question of the case, we can not determine it solely by the decisions of those courts, but must be governed by the weight of authority.

Certificates in fraternal associations for indem-
nity in the event of death are contracts for insurance,
subject to all the rules of law which control the' inter-
pretation of contracts generally, create and enforce
their obligations and prohibit their impairment or sub-
sequent alteration without the consent of both the con-
tracting parties. State v. Benevolent Society, 72 Mo.
146; Commonwealth v. Weatherbee, 105 Mass. 149. And
it is a universal principle that one competent party to
a legal contract can not rescind, annul or impair it,
but must perform the full obligation it carries unless
excused by his obligee; as it is also a universal princi-
ple that in ascertaining the extent of the obligation as-
sumed, preference will be accorded to an interpreta-
tion that yields just and reasonable consequences and
squares with the ordinary actions and motives of men,
over one that leads to results unreasonable, unjust and
inconsistent with those actions and motives.

With these premises in mind let us turn to the sui-
cide by-law of the appellant company in force when
Charles Morton died and consider its meaning and ef-
fect according to the usual canons of interpretation and
without regard to any statute of this State, conceding
(but not deciding) that the company enjoyed immunity,
when it issued the certificate, from the general insurance
laws of Missouri and hence from the statute in regard
to the defense of suicide.

It will be observed that the by-law as passed
March 28, 1893, and the first amendment thereof April
2, 1895, do not affect appellant's liability on its certifi-
cate because, as first adopted, the by-law only reduced
the amount to be paid on a benefit certificate provided
the insured died by his own hand two years after becom-
ing a member, and the first amendment only in case that
kind of a death occurred within five years after he be-
came a member. Morton became a member originally
in 1889 and lived until May, 1900, the certificate in suit
having been issued in 1893.

The next amendment adopted June 18, 1897, does not in terms apply to certificates theretofore issued, and under the rule of strict construction of provisions for forfeitures, will not be construed to apply to prior certificates. The important amendment is the one adopted April 11, 1899, which purported to bind members theretofore as well as thereafter admitted and provided that if any member should die by his own hand, whether sane or insane, his beneficiary should only receive one-half of the face value of his certificate. This by-law is asserted to have become part of the contract of insurance between the Royal League and Charles Morton, by virtue of a term of the certificate providing that the order was only bound to pay the full amount of the certificate in case, among other things, the insured complied with "the laws, rules and regulations now governing the said order and fund or that may hereafter be enacted by the supreme council to govern said council and fund, all of which are also made a part of this contract."

We are referred to decisions that by-laws like the one in question affect prior insurance when the certificate contains a proviso that it shall be subject to future by-laws. In weighing the authority of the different cases in which that ruling is made the language of the certificates ought to be attentively noticed in order to ascertain the exact scope of the stipulations, and to see how pertinent the opinion is to the particular case in which it is cited.

But there are numerous well-considered opinions in which it is ruled that subsequent by-laws undertaking to reduce the amount to be paid in certain contingencies, do not take effect on previous contracts; and that a stipulation to comply with future regulations means the member will comply with such as relate to his duties as a member, but does not mean that the society may interfere with the essential purpose of the contract, namely, the indemnity covenanted to be paid. Hy-

singer v. Supreme Lodge, 42 Mo. App. (St. L.) 635; Knights Templar, etc., v. Jarman, 104 Fed. 638; Supreme Council v. Getz, 112 Fed. 119; Pokrefky v. Assn. 121 Mich. 456; Becker v. Benefit Society, 144 Penn. St. 232; Nesler v. Connor, 17 Penn. St. 136; Hale v. Ins. Co., 31 Atl. (Pa.) 1066; Becker v. Mutual Benefit Ins. Co., 48 Mich. 610; Wiler v. Equitable Union, 36 N. Y. Supp. 734; Langan v. Legion of Honor, 70 N. Y. Supp. 663; Newhall v. Legion of Honor, 63 N. E. (Mass.) 1; Wist v. Grand Lodge A. O. U. W., 22 Oregon 271; Gaut v. Legion of Honor, 64 S. E. (Tenn.) 1070; Strauss v. Mutual Reserve Fund, 128 N. C. 465; Bregaw v. Knights of Honor, 38 S. E. (N. C.) 905.

Whatever the rule may be in other jurisdictions, in this one it is that by-laws of the kind involved in this controversy do not materially alter or impair prior contracts of insurance, whatever the proviso of the certificate may be in regard to future by-laws, on the theory above stated, that the intention of such a provision is to bind the insured simply by administrative or regulative enactments; not such as go to the reduction or withdrawal of the consideration for which assessments are charged. We think this interpretation is not only reasonable and just, but is the only one consistent with the very words of the particular certificate under consideration, which bound Morton to *comply* with all the by-laws in force when he took the insurance or that might thereafter be enacted; and words are to be appraised at no more than their real value when a forfeiture is invoked in their name. Complying with a by-law, or any other law, means obeying it, and obedience in its nature and essence calls for intelligent action by a sane being. As was said in the Wist case (22 Oregon, supra) an agreement to comply with future by-laws means such as the member can comply with. The by-law invoked against the respondent's right is that if Morton committed suicide while sane or insane, the amount of the policy should be reduced by one-half.

Said by-law does not call for obedience or compliance on the part of a member—is not one which a member is supposed to obey; but is a mere proviso that in case he takes his own life a certain consequence shall result. But if it did call for obedience, how can Morton be rationally held to have agreed, years in advance, that he would not commit suicide if insane? Such a contention is extravagant. Compliance with a by-law must be the act of a sound mind which is able to know the by-law has been adopted and to comprehend and observe its commands. The law compels us to scrutinize this certificate and refuse to permit its annulment unless the plain meaning of its term forces that result; and *a fortiori* must we refrain from seeking an unnatural meaning to bring about such a result. McCullom v. Ins. Co., 61 Mo. App. (St. L.) 352. Common sense tells us at once that Morton never intended to bind himself to comply with a law that might be enacted while he was insane or to control his acts while in that state, as it tells us also he did not intend to empower the association to abrogate part of its liability.

The principle of construction to be applied to the enactments of an order intended to operate retrospectively is, that they shall have an effect on previous contracts such as may, with probability, be assumed to have been contemplated by the contracting parties, instead of one in the nature of confiscation. It is doubtless competent, and may be wise, for insurance companies to refuse to indemnify against suicide; but the usefulness of such a policy is outweighed by the evil of allowing obligations assumed and paid for through years to be impaired or swept away at the will of the party which has so far received all the consideration. If companies can reduce their liability in case of suicide by half, they can totally wipe it out; and the unjust result will be that part of the indemnity for which the insured long paid premiums, will cease to exist without the restoration of any portion of his payments.

This case is identical with Smith v. Knights of Pythias, 83 Mo. App. (St. L.) 512, in all its facts and is conceded to be, appellant asserting that that precedent had been disregarded and practically overruled by the later decision of Morton v. Royal Tribe of Joseph, 93 Mo. 78. All the last-named case decided was that the Royal Tribe of Joseph is a fraternal beneficial association, and as such exempt from the provisions of the general insurance laws of the State, so that suicide was a good defense to an action on one of its certificates. The entire contention was as to whether said company was a fraternal society or a general insurance company; nor was there any point made that the by-law or constitutional clause invalidating certificates if the assured suicided, was enacted after the certificate was issued, nor, in fact, any proof to show it was. The opinion in Smith v. Knights of Pythias, supra, was not adverted to in the opinion because the two cases had nothing in common. In Richmond v. Supreme Lodge 100 Mo. App. (St. L.) 8, the certificate was for a sum *not to exceed* two thousand dollars and expressly provided that the right of the beneficiary should be determined by the certificate and by-laws in force when the benefit became payable.

The doctrine of this court that a proviso in a benefit certificate, by which the insured agrees to comply with future rules and regulations, goes no further than to grant a permission to the company to bind the member by amendments of its constitution and rules in matters relating to his membership duties and the society's internal economy and mode of transacting business, is approved and expounded with convincing logic and learning by eminent judges in the cases we have cited. Those cases involved, in principle, the essential point at issue here, namely: the effect of an agreement in a mutual insurance policy that the member will be bound by or comply with future amendments of the order's constitution and rules, on the society's power by a sub-

sequent by-law to diminish the amount of its liability in certain contingencies.

In Knights Templars etc., v. Jarman, the certificate bound the company to pay Jarman's wife and children the amount named and all money paid on the policy in assessments, subject to certain limitations contained in the constitution of the order. Jarman had agreed to abide by the constitution, rules and regulations of the company as they were when he took the insurance, or might be made thereafter. A properly enacted by-law exempted the company from returning assessments on policies and it was held to have no effect on the Jarman policy, which antedated the by-law.

In Supreme Council v. Getz, an agreement was made by the deceased member when he joined the order (American Legion of Honor) "to conform in all respects and be bound by the existing laws and all future adopted amendments and enactments." Held, not an agreement by the insured to accept a by-law reducing the amount of insurance to be paid by the Legion at his death.

In Pokrefky v. Firemen's Fund Assn., the charter of the association provided that its affairs should be governed by trustees who might change its by-laws at pleasure. This charter authority was ruled not to empower the trustees to change a by-law in force when the plaintiff's decedent joined the association, which provided that said decedent's beneficiary was entitled to the entire amount of one assessment on all the members, so as to entitle the beneficiary to only part of an assessment.

In Becker v. Beneficial Society, plaintiff had joined the defendant society when a by-law was in force granting weekly benefits to a named amount to a sick member. Years afterwards it reduced the amount by by-laws then adopted in accordance with the constitution of the order. Held, that even after the adoption of said by-laws, plaintiff when sick, was entitled to the

amount of weekly benefits allowed when he joined the society.

In Becker v. Farmers Mutual Insurance Company, 48 Mich. 610, the contract was for fire insurance in a mutual company, the policy stipulating that it was subject to the charter and by-laws. Becker was notified of the enactment of a by-law vacating the policy if the premises remained vacant twenty days. Held, a contract once made with a member can not be changed in its essence without his consent, and whatever force new by-laws might have, they could not be allowed to destroy express contracts.

In Hale v. Equitable Aid Union, the certificate recited that "it was subject to such laws, rules and regulations as now exist or may hereafter be adopted." The insured was to receive one-half the amount of the certificate in twelve years if she was then living and in good standing, and was ruled to be entitled to that benefit regardless of a subsequently adopted by-law confining the benefit, in the case of previous as well as present policy-holders, to those who should live to the expectation of life and limiting the payment then to be made to ten per cent of the amount of the certificate.

In Wiler v. Equitable Aid Union, the applicant for a policy agreed to accept it subject to future regulations, but was nevertheless held entitled to receive the amount of the policy in eleven years according to its terms, although a by-law was enacted later which restricted payment to such members as lived to the expectation of life—the same decision as in the Hale case.

In Langan v. Legion of Honor, 70 N. Y. Supp. 663, the change of rules reduced the amount payable on any benefit certificate; the member had promised full compliance with present and future laws, but the policy was enforced as written.

In Newhall v. Legion of Honor, the decision was to the same effect.

In Wist v. A. O. U. W., 22 Oregon 271, the insured

had promised compliance with future regulations and requirements as the express condition on which he was to participate in the beneficiary fund, taking out a policy for plaintiff who was not a member of his family nor dependent on him.　A subsequent by-law had limited beneficiaries to relatives and dependents, of which change the insured had notice.　Held, the new rule did not become part of the agreement nor affect the right of plaintiff to recover.

In Strauss v. Life Assn., 126 N. C. 971, 128 Id. 465, it was held that an agreement that the constitution and by-laws of the association might be amended, did not authorize an amendment taking away a member's substantial rights.

To the same effect is the later North Carolina case of Bregaw v. Knights & Ladies of Honor, 38 S. E. 905.

The foregoing cases were all decided on the theory that subsequent by-laws, despite the member's agreement to comply with them, can not defeat or abridge the essential rights created by the policy, but affect only the member's duties as such; not his interests as a contracting party.　In all of them we find the same argument here advanced and accepted by some courts, that the business experience of companies shows them what regulations ought to prevail and that it is necessary that they be permitted to avail themselves of the teachings of experience by enacting new regulations, as needed, to bind all members and control all agreements. There is some merit in that argument and it is pertinent to any legislation respecting contracts.　It has not been thought, however, sufficiently meritorious to permit State Legislatures to impair obligations, and we think it not sufficiently so to permit insurance societies.

What has always been a leading decision to support the appellant's position is Supreme Lodge v. La-Malta, 95 Tenn. 157; but the authority of that case seems to be shaken by the later one of Gaut v. Supreme

Council, supra, which determined a point not materially different from the one involved in the LaMalta case, it seems to us. But the point was decided the other way and all the foregoing authorities, including Smith v. Knights of Pythias, which repudiate the doctrine that by-laws can be passed to impair previous contracts, were approvingly cited.

The motions to intervene were filed after judgment and were properly overruled.

We find no cause to be dissatisfied with the former rulings of this court in similar actions, our review of the authorities having strengthened and reinforced the conviction that they were sound and just; and as the judgment of the court below was in conformity to them it is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.