## Royal League v. Anna Sexton Kavanagh.

### Gen. No. 13,100.

1. FRATERNAL BENEFIT SOCIETY—*when certificate may be sued on in state other than Illinois.* An action may be maintained upon a benefit certificate in a state other than Illinois, where it does not appear that the contract was necessarily to be performed in Illinois, and where it does appear that the society issuing the certificate was doing business in the state in which the suit is brought.

2. INJUNCTION—*when does not lie to restrain suit upon benefit certificate.* An injunction should not be awarded to restrain an action upon a benefit certificate brought in a state other than Illinois, notwithstanding the certificate was issued in Illinois to, and in favor of, citizens thereof, merely because the courts of another state in which the society issuing the certificate was doing business, have placed upon such contract a construction different from that which had been placed thereon by the courts of Illinois.

Bill for injunction. Appeal from the Circuit Court of Cook county; the Hon. Julian W. Mack, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1906. Affirmed. Opinion filed May 14, 1907.

Mann & Miller, for appellant.

W. S. Oppenheim, for appellee; Walter H. Chamberlin, of counsel.

Mr. Justice Smith delivered the opinion of the court.

The bill of complaint alleges that appellant is a fraternal insurance society organized under the laws of this state; that it operates and conducts its business through subordinate councils; that each member of the society has a voice and vote in the enactment of by-laws and the government of the society through duly elected representatives who constitute the members of its supreme council or governing body; that one of its subordinate councils is located in Chicago and known as Lake Shore Council No. 59; that in September, 1895, one Thomas W. Kavanagh, then a citizen of this state, residing in Chicago, made application to join appellant and applied for membership in Lake Shore Council, and in order to persuade and influence the appellant to accept him as a member did under date of September 10, 1895, sign a certain application and agreement forming and constituting a part of appellant's medical examiner's blank, which application contained the following language, to wit:—

"If accepted as a member, I agree to comply with, and that my membership and all interests of the persons entitled to such benefits shall be subject to all laws, rules and usages now in force in the order, or which may be hereafter adopted by it."

The bill further alleges that Kavanagh's application for membership was approved; that he was admitted as a member of appellant in Lake Shore Council and there was issued and delivered to him the benefit certificate referred to therein, bearing date September 24, 1895, in which certificate appellee, his

wife, was named as beneficiary and which certificate contained in part the following language:

"This certificate is issued to Thomas W. Kavanagh, of Lake Shore Council No. 59, Royal League, located at Chicago, Illinois, upon evidence received from said Council that he is a contributor to the Widows' and Orphans' Benefit Fund of this Order; and upon condition that the statements made by him in his application for membership in the said Council, the representations and agreements made and subscribed to by him in the medical examiner's blank * * * be made a part of this contract, and upon the condition that the said member complies, in future, with the laws, rules and regulations now governing the said Council and Fund, or that may hereafter be enacted by the Supreme Council to govern said Council and Fund, all of which are also made a part of this contract. These conditions being expressly assented to and complied with, the Supreme Council of the Royal League hereby promises and binds itself to pay out of the Widows' and Orphans' Benefit Fund, to Anna Sexton Kavanagh, wife, a sum not exceeding $1,000.00, in accordance with and under the provisions of the law governing said fund," etc.

That said certificate was delivered to and accepted by Kavanagh and his acceptance thereof evidenced by an endorsement upon the bottom thereof reading: "I accept this certificate on the conditions named herein," which he signed.

The bill further shows that at the time Kavanagh joined the order there was in force a suicide by-law to the effect that if any member should, within two years subsequent to his admission into the order, die by his own act or hand, sane or insane, his beneficiary should receive only one-half of the face of the certificate; that that time was subsequently changed to five years, then another change removed the limitation of time entirely, and in April, 1905, the suicide by-law was amended so as to fix the amount which should be paid to the beneficiary at the total amount actually paid by the member to the Widows' and Orphans' Benefit

Fund, which by-law went into force on July 1, 1905, and was in force on August 29, 1905, at which date, the bill alleges, Kavanagh committed suicide in the city of New York, leaving him surviving appellee, his widow, as his beneficiary.

The bill further alleges that Kavanagh was a citizen of Illinois when he joined the order, and continued so to be thereafter until his death, and it charges upon information and belief that he and his wife, the appellee, resided together in Cook county and continued to reside here from the time he joined the order until the date of his death, and that appellee is now a citizen of Illinois and resident of Cook county.

The bill further alleges that the suicide by-law which was in force when Kavanagh committed suicide was valid and binding upon him and his beneficiary, although adopted subsequent to his joining the order, by reason of the fact that in his contract with appellant there is contained an agreement that such member would be bound by, and the interests of all persons entitled to benefits subject to the laws, rules and usages in force in the order at the time of the member's joining the order or which might thereafter be adopted by it; that by reason of the suicide of the said Kavanagh the liability of appellant to appellee was for the sum of $322.84, which constitutes the actual amount paid by said Kavanagh into the Widows' and Orphans' Benefit Fund of appellant.

It is further alleged that in the Morton case (100 Mo. App. p. 76) it has been settled as the rule of law in Missouri that suicide by-laws of appellant adopted subsequent to the date of the member's joining the order are not binding upon him or his beneficiary, although by the terms of the contract of membership there is an agreement contained therein that such member and his beneficiary shall be bound thereby so that the rule of the law which obtains in the State of Missouri upon this question is directly contrary to the rule which obtains in this state; that appellant is licensed to do business in the State of Missouri, has

subordinate Councils there, has agents upon whom service can be had, so that appellee will be able to procure service upon appellant in Missouri in case of her going into that jurisdiction and beginning suit.

It is further alleged that the contract entered into between appellant and said Kavanagh and which was in force at the time of his death was entered into between two citizens of Illinois, in the State of Illinois; that the benefit certificate in question was delivered in Illinois, the assessments required to be paid by Kavanagh paid in Illinois, and that under the law the place of performance of said contract was and is in Illinois, so that said contract is an Illinois contract, into which the laws of Illinois enter and form a part, and that appellant is entitled to have its rights and liabilities under and by virtue of said contract adjudicated and determined under and in accordance with the laws of Illinois.

The bill further alleges that if appellee begins proceedings against appellant in Missouri upon said contract, appellant cannot obtain the benefit of the laws of Illinois by pleading such laws in any suit begun in Missouri, for the reason that the rule of law in Illinois holding a member and his beneficiary bound by by-laws enacted after the member has joined the order, where there is an agreement in the contract to be so bound, does not rest upon a statute in force in Illinois, but is a rule of the common law, and that it has been determined and settled to be the law in Missouri in the Campbell case (100 Mo. App. p. 249), that where the courts of the State of Missouri are called upon to consider and construe a contract entered into in a sister state and the rule of law which obtains in the state where the contract was made or was to be performed is other and different than the rule which obtains in the State of Missouri, and the rule of law which obtains in the state where the contract was made or was to be performed, is a rule of the common law of that state and not based upon the statutes thereof, the courts of Missouri will not follow the rule which

obtains in the state where the contract was made or to be performed, but will construe said contract according to the rule which obtains in the State of Missouri; that the appellee, in order to evade the rules of law which obtain in Illinois and by which her rights should be determined, and in order to avail herself of the rules which obtain in Missouri, threatens and intends to bring legal proceedings against appellant in Missouri and in the courts of that state on the benefit certificate in question in order to compel appellants to pay $4,000, when in truth and in fact appellant is liable for only $322.84, which action and conduct on the part of appellee, the bill charges, would be a fraud upon appellant and result in depriving it of its rights under the laws of this state.

It is further alleged that appellant has a membership of more than 27,500 members, of which about 20,000 are in Illinois, holding contracts of membership made and entered into in the State of Illinois and to be performed in Illinois, where the benefit certificates were delivered and dues and assessments were paid in Illinois, so that said contracts are governed by the laws of Illinois, and that to permit appellee to begin and maintain a suit in the State of Missouri, where the rules of law governing this case are different than in Illinois, and where the courts will not follow the law of Illinois, will be to permit appellee not only to work a fraud upon appellant, but likewise upon those members residing in and citizens of the State of Illinois and holding Illinois contracts.

The bill then avows appellant's ability and readiness to pay to appellee whatever sum is due her, and it tenders into court and offers to pay to the clerk of the court, subject to the court's order, $322.84, etc.

There is then the usual prayer that appellee be compelled to answer, but not under oath, and that a writ of injunction issue to restrain appellee from proceeding against appellant in any form or action whatever on said benefit certificate in the courts of Missouri or of any other state where, under the laws of such state,

the courts of that state will not be required to construe and enforce the contract in question in accordance with the laws of Illinois, and for general relief, etc.

Upon the recommendation of the master an injunction was issued, as prayed for in the bill of complaint, upon the filing of a bond in the sum of $4,000, which was approved by the court.

The bill of complaint was filed and the bond approved March 6, 1906. April 4, 1906, a general demurrer was filed to the bill of complaint and on May 3, 1906, the court entered a decree dissolving the injunction, sustaining the demurrer to the bill and, a suggestion of damages having been filed, assessing appellee's damages at the sum of $100. Appellant electing to stand by its bill of complaint, the bill was dismissed at its cost, whereupon this appeal was prayed and perfected.

The question presented by the record is, did the chancellor err in sustaining the demurrer to the bill?

The equitable ground presented by the bill of appellant as the basis for the injunction prayed for is, that because of the fact that Thomas W. Kavanagh, while a citizen of the State of Illinois became a member of appellant, a benefit society organized under the laws of this state, with a membership extending throughout this state and the State of Missouri, and continued to be a citizen of this state until his death, and for the further reason that appellee is now residing in this state, it is inequitable for appellee to sue appellant in the State of Missouri and secure the same rights as are accorded to other members of appellant living in that state.

The bill concedes that under the law of the State of Missouri, all appellant's beneficiaries residing in that state are entitled to resort to the courts of Missouri and recover judgments against it for the face amounts of their benefit certificates, but it claims that beneficiaries residing in Illinois at the time the suit

is brought do not have that right, and that an attempt on the part of the beneficiary residing here to resort to the courts of Missouri should be enjoined. Reduced to its elements, this is the theory of the bill and the argument of counsel.

For the purposes of this case, in the view we take of it, many of the propositions advanced in behalf of appellant may be conceded, namely: That the constitution, by-laws, application for membership and benefit certificate enter into and form a part of the contract between a fraternal benefit society and its members and beneficiaries; that where the contract between a fraternal beneficiary society and one of its members contains an agreement that the member will comply with and abide or be bound by future enacted by-laws, such by-laws are sustained, where they are not unreasonable in character, and suicide by-laws are held to be reasonable. The law of the place where a contract is made, if it be performed there, must govern; if to be performed elsewhere, then the law of that place enters into the contract, governs its construction and determines its validity; and that each state has its own common law. We do not find it necessary, however, to pass upon these propositions in reaching our conclusion in this case. The demurrer admits the averments of the bill that the courts of Missouri hold that a member of a beneficiary society and his beneficiary are not bound by subsequently enacted suicide by-laws, even though the contract of membership contains an agreement that they will be so bound, as held in Morton v. Supreme Council, 100 Mo. App. 76, cited in the bill. And that the courts of Missouri hold that "While the rights of parties under contracts made and to be *performed* in a sister state are usually measured by the laws of such state, even when the enforcement of the contract may be sought in this state, yet we cannot adopt and yield to a mere interpretation of a contract not confined in its performance to that state, but is susceptible of execution eleswhere,   *   *   *   in direct conflict with the rule in this state," as held in the case of Campbell v.

American Benefit Club Fraternity, 100 Mo. App. 249.

It is to be stated, however, in this connection that in Morton v. Supreme Council, *supra,* while the contract there, like the contract here involved, contained an express provision that the members should be bound by subsequently enacted by-laws, the defendant failed to plead and prove the law of Illinois, and the court, after noting the fact, and commenting upon the "senseless rule of practice" which still obtains, requiring a party, where an action or defense rests on a foreign law, even if it be one of a sister state of the Union, to plead and prove such law as a fact, says that it must be governed by the rule of practice, "and, as the answer contains no averment in regard to the decisions of the courts of Illinois on the crucial question in the case, we cannot determine it solely by the decisions of those courts, but must be governed by the weight of authority." It is clear, therefore, that the court does not hold in that case that if the law of Illinois had been presented to the court in the proper manner, it would have decided differently from the Illinois courts upon the question as to whether a member of a beneficiary society, or his beneficiary, is bound by subsequently enacted suicide by-laws, where the contract of membership contains an agreement to that effect.

It should also be noted that there is no provision in the contract set up in the bill which provides that it is to be performed in Illinois. Appellant is a corporation doing business and having members in several states of the Union. It agrees to perform its contracts wherever it is doing business or its members reside. The contract is not of such a nature that it must be performed by either party in any particular place. Had appellee removed to Missouri either before or after the death of her husband, it cannot be doubted that she could have called upon appellant to perform, and appellant would have been bound to perform in that state. The mere accident of place or residence of the beneficiary when the certificate matured, or when proofs of death were made under it, or when demand

was made for payment, being no part of the contract, cannot have the legal effect to fix the place of performance at any particular place.

Directing now our attention to Campbell v. American Benefit Club Fraternity, 100 Mo. App. 249, referred to in the bill with this consideration in mind, we find the society was organized under the laws of the State of Kentucky and transacted business in Mississippi. The case involved the validity of a subsequently enacted by-law, with an agreement in the contract on the part of the member to be bound by such by-laws. Under the decisions of the Supreme Court of Mississippi, the by-law was binding upon the beneficiary of the deceased member. The law of Mississippi as established by the decisions of the Supreme Court of that state was pleaded and proven in a suit brought in Missouri. The court in disposing of the question used the language above quoted. This, we think, is a clear recognition of the doctrine that where the contract is made and is to be performed by its terms and provisions in a sister state, it will be enforced in Missouri according to the law of the state where made and to be performed. The inference is also plain, and it may be said to appear affirmatively in the decisions referred to, that if the contract set out in the bill is one of that character, as contended by appellant, it will be enforced in Missouri according to the law of Illinois.

This, then, is the extent, and the full extent, of the admission by the demurrer, as to the law of Missouri as averred in the bill, according to the cases cited and relied upon in the bill.

We are inclined to the opinion, as above suggested, that the contract in question is not a contract to be performed in this state and nowhere else by either party. It has none of the elements or ear-marks of such a contract. It contains no express provisions which necessarily or by implication impress such a character upon it. Payment of dues or assessments made anywhere to an officer or agent of appellant would be as effectual as if made in Illinois. The rights

of the beneficiary of the deceased member are not local to the State of Illinois, nor are they bounded by state lines. Appellant has no contract right to perform in this state and not elsewhere, or have performance enforced in this state only. It certainly has no implied legal right of that nature. It follows that no substantial right of appellant is violated by commencing suit against it in Missouri, or any other state where it is doing business, and prosecuting such suit to judgment. This would doubtless be conceded by counsel for appellant, if the Missouri court gave the same construction to the contract as the Illinois courts.

The question then is, does the fact that the courts of that state have construed the contract differently, resulting in a different measure of damages, constitute a ground for equitable relief by injunction? Or, to state the question in another way, will a court of equity enjoin appellee from availing herself of the laws of Missouri where appellant is doing business, under the averments of the bill, upon the ground that the courts of that state place a different construction upon the contract from that of the Illinois courts?

We think the proposition must be answered in the negative for several reasons.

It is not questioned that upon the ground of fraud a court of equity will interfere to prevent those who are amenable to its process from instituting or carrying on suits in other states. Where a creditor institutes an action of attachment and garnishee proceedings in another state for the purpose of gaining a preference over the complainant or depriving him of some legal right, such as immunity against imprisonment for debt, or seeks to evade the laws of the state by resorting to the courts of another state, thereby perpetrating a fraud, equity will interfere. The case of Dehon v. Foster, 86 Mass. 545, cited by appellant, is an instance of an attempt on the part of one party to avoid the insolvent laws of Massachusetts and obtain a preference over the complainant and others by attaching a debt due the insolvents in Pennsylvania,

thus interfering with the administration of the insolvent estate in Massachusetts and the equitable division of that estate among the creditors, by the complainant Dehon, the assignee. It requires only a brief statement of the case to distinguish it from the case at bar.

Snook v. Snetzer, 25 Ohio St. 517, cited by appellant, involved an attempt on the part of Snook to go into West Virginia and attach the wages of Snetzer, the head of a family, and to thus avoid the exemption law of Ohio, and falls within the doctrine above stated. Many of the cases cited by appellant are of the same character, and we will not take the time to mention them in detail. The basis of the jurisdiction in such cases is that it is a fraud and inequitable for a creditor to secure property which is exempt from his debt under the laws of the state where he and his debtor reside, or to secure a lien on property in another state, which, as between the parties, the creditor ought not to have in equity and good conscience.

The case of Dinsmore, etc., v. Neresheimer et al., 32 Hun 204, cited by appellant, appears to be directly in point, but, so far as we are advised, it is the only case where the commencement and prosecution of a civil action at law in a foreign jurisdiction where no lien or attachment of property, or an exemption statute was involved, is made the ground of equitable interference. If the Dinsmore case announces the law correctly, the prosecution of all suits in foreign jurisdictions between residents of the same state may be enjoined. It is an exceptional case, and cannot be reconciled on principle with the general line of authorities upon that subject. For these reasons we do not consider it an authority which we ought to follow.

The other cases cited by appellant to sustain its contention are plainly distinguishable from the case at bar. This appellant has voluntarily entered the State of Missouri and has received members there on a basis which makes a membership more valuable than in this state, according to the bill. The residents of that state, although paying for their mutual and fraternal insur-

Royal League v. Kavanagh.

ance at the same rates as the residents of this state, are, under the law of Missouri, a class of members by themselves, holding certificates of greater value than the certificates of residents of Illinois. The real object of the bill appears to be to prevent appellee, the beneficiary of a fellow member with the Missouri members, whose certificate represents the same assessments and payments as the Missouri members, from sharing in the same manner, and to the same extent and value, in the fraternal benefits as the Missouri members do under the law. This does not appear to us as fair, just and equitable. We cannot say that if appellee prosecutes her proposed suit to judgment, it would be, under the circumstances of this case, such an injury to appellant and such a fraud upon appellant which a court of equity ought to prevent by injunction.

Considering all the facts and circumstances set out in the bill, we are of the opinion that it fails to show a case justifying a court of equity in restraining the prosecution of appellee's suit.

The reasoning of the courts in Carson v. Dunham, 149 Mass. 52; Cable v. U. S. Life Ins. Co., 191 U. S. 288; and Thorndyke v. Thorndyke, 142 Ill. 450, is persuasive, and the principles announced seem to us to control the disposition of this case. According to these cases, the showing that the law is more favorable to the defendant in the jurisdiction selected by him, or that there is danger that the courts of that jurisdiction will not rightly and justly decide the rights of the parties, does not justify a court of equity in exercising its restraining power upon the parties. High on Injunctions (3rd ed.), sec. 107; Pomeroy Eq. Jur., sec. 1361.

The decree of the Circuit Court is affirmed.

*Affirmed.*