First ward to put a period to the strike. He had his gang at his back. Down the street came a Pole, a union leader among his countrymen. Connors called to him. The Pole, thinking that this was an invitation for a parley, approached. Connors was carrying a heavy, crooked cane. He hooked the crook about the Pole's neck, jerked him over close, and split his scalp with two blows of his staff."

The alleged justification for this publication is:

"The plaintiff did have an altercation with a certain union man, and it was publicly charged and believed in the city of Buffalo that he did assault such union man with a heavy, crooked cane, and beat such man therewith."

To publish a charge of assault in the second degree upon a colaborer cannot be justified by proving that plaintiff "did have an altercation with a certain union man." The fact that it was charged and believed that plaintiff did assault a union man is entirely immaterial as proof that the assault was in fact committed, and would afford no justification whatever for the published charge.

The only possible ground for the examination of the plaintiff is to prove defendant's defense of justification. As no complete defense is interposed to any alleged libel, there can be no examination relative to the matters referred to in the answer as being a justification for the alleged publication. The matters set forth in the answer, alleged in mitigation of damages, are all alleged to be within the knowledge of the defendant, and no necessity or reason for the examination of the plaintiff to procure evidence of those matters exists.

The answer, however, does contain a perfect defense of justification in the fifth separate answer, wherein it is alleged that plaintiff consented to and authorized the publication of the matter complained of.

Under the authorities (Schweinburg v. Altman, 131 App. Div. 795, 116 N. Y. Supp. 318; Bock v. Bock, 130 App. Div. 229, 114 N. Y. Supp. 473; Goldmark v. U. S. Company, 111 App. Div. 529, 97 N. Y. Supp. 1078; McKeand v. Locke, 115 App. Div. 175, 100 N. Y. Supp. 704; Cherbuliez v. Parsons, 123 App. Div. 814, 108 N. Y. Supp. 321), defendant is entitled to examine the plaintiff as to the matters alleged in paragraph 18 of the fifth separate answer.

An order may be entered, denying plaintiff's motion, but limiting the examination of the plaintiff to the matters last above referred to.

---

ROCKWELL v. KNIGHTS TEMPLARS & MASONIC MUT. AID ASS'N.

(Supreme Court, Appellate Division, Third Department. November 10, 1909.)

1. CONTRACTS (§ 10*)—MODIFICATION—MODIFICATION BY ONE PARTY.

It is repugnant to the idea of a contract that one party may at will change the amounts he is to receive thereunder, and the consideration he is to render; and, even if such a contract is valid, it must be susceptible of no other construction, to justify so construing it.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CORPORATIONS (§ 56*)—BY-LAWS—AMENDMENT—EFFECT.

The right of every corporation to change its by-laws, consistent with law, does not authorize it to so modify them as to change its contractual obligations, or impose obligations upon one contracting with it which he did not assume.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 152.; Dec. Dig. § 56.*]

3. CONTRACTS (§ 244*)—MODIFICATION—EX PARTE MODIFICATION.

That a contract proves unprofitable to one of the parties does not entitle him to change its terms at will, so as to make it more profitable.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1128; Dec. Dig. § 244.*]

4. INSURANCE (§ 719*)—MUTUAL BENEFIT INSURANCE—BY-LAWS—AMENDMENT —INCREASING RATES—VALIDITY OF BY-LAWS.

The certificate issued by defendant, a foreign insurance company, insured plaintiff for a certain amount, in consideration of a cash payment and "such further sums to be hereafter paid, as is provided for in the by-laws copied on the back hereof," which were made a part of the certificate, and which included a "period and rate table," which provided the rates each member should pay, according to his age, and contained other provisions for assessments, upon members according to such classification, upon the death of a member, and for forfeiture upon nonpayment, but did not provide for amendments to the by-laws. Other by-laws required applicants to be between 21 and 60 years of age, in good health, etc., and to belong to one of three high Masonic orders, and the application provided that the applicant would abide by the rules of the association. Thereafter defendant, pursuant to a statute, amended its by-laws by abolishing the period and rate table and substituting a different table, based upon a different plan, and afterward again amended its by-laws so that each member would have to pay a fixed rate each year on each $1,000, a large increase over the assessments upon each death as provided in the original rate table. Held, that the rules by which plaintiff agreed to be governed were those then in existence, and especially those made a part of the certificate, and defendant could not amend its by-laws, so as to change plaintiff's obligations, by increasing his rate of payment over that provided in the original certificate, and the fact that plaintiff was a member of the corporation was immaterial, as was the fact that membership was limited to Free Masons; defendant being organized solely as a life insurance company, without any fraternal features.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1855; Dec. Dig. § 719.*]

5. INSURANCE (§ 724*)—MUTUAL BENEFIT INSURANCE—CONTRACT—ESTOPPEL TO OBJECT—ESTOPPEL BY INSURED—VALIDITY OF BY-LAWS.

That insured paid assessments made under an invalid amendment to the by-laws, increasing the rate of assessment contrary to the terms of the certificate, under a threat to forfeit the certificate unless they were paid, did not entitle the company to further amend its by-laws, so as to impose illegal assessments, or estop him from denying the validity of both amendments, in so far as they affected his original contract.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 724.*]

6. CORPORATIONS (§ 675*)—FOREIGN CORPORATIONS—ACTIONS AGAINST—JUDGMENT—ENFORCEMENT.

Where a foreign insurance corporation, doing business in this state, appeared generally and defended on the merits in an action by a certificate holder to have his contract with it adjudged in force, unaffected by amendments to defendant's by-laws, the court had jurisdiction to determine that the amendments did not affect plaintiff's certificate, and that it remains in force, and to require defendant to perform its contract;

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that it cannot compel defendant's nonresident officers to perform the contract going only to the manner of enforcing the judgment, it being susceptible of suitable enforcement if defendant continues to do business in the state.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 675.*]

Appeal from Trial Term, Chemung County.

Action by Hosea H. Rockwell against the Knights Templars & Masonic Mutual Aid Association. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

The defendant is a corporation organized under the laws of Ohio for the purpose of carrying on the business of life insurance upon the co-operative or assessment plan. In September, 1880, it issued its certificate or policy to the plaintiff, then 40 years of age, whereby, in consideration of the representations made in the application, of the sum of $15.25 cash payment, "and such further sum or sums to be hereafter paid as is provided for in the by-laws of the association copied on the back hereof," it was to pay to his widow or heirs the sum of $5,000, or such proportion thereof as is provided for in said by-laws. The policy or certificate also provided: "The by-laws on the back hereof constitute a part of this certificate." The application provided: "I further agree, if accepted, to abide by the rules and regulations of the association." Several by-laws were printed upon the back of the policy, among which was article 3, section IV, which was the "Period and Rate Table," by which members were divided into eight periods, according to age, and were to pay as therein stated. The first period included ages from 21 to 30, inclusive, and the payment was to be 50 cents upon each $1,000 on the face of the certificate. The third period included the ages from 36 to 40, inclusive, in which the payments were 65 cents on each $1,000 on the face of the certificate. The eighth period included the ages from 61 and upwards, and provided a payment of $2 on each $1,000 on the face of the certificate. The section further provided: "As each member advances in age, his assessment shall increase according to the above period of rate. All members reaching the age of 61 years shall be members of the eighth period." Section 1 of article IV, entitled "Assessments," provided that: "Upon the death of a member each holder shall be assessed a sum according to the period in which he stands at the time of such assessment and according to the amount of his certificate. The Period and Rate Table is drawn for $1,000 and shall be the unit in determining all other fees." Article 2, section IV, provided that, if a member failed to pay his assessment for 10 days after notice thereof, he thereby forfeited his certificate of membership and all benefits therefrom. Section III provided that upon the proof of death there should be paid to the beneficiary 75 per cent. of the amount collected on an assessment, not to exceed the face of the certificate. Section IV provided that, if the amount accruing upon an assessment shall be more than enough to settle for the death loss, the surplus shall be used in settling for the next death losses, and that no assessment shall be made until it is so used. The by-laws contained no provision with reference to their amendments, although the statute of Ohio provided that every corporation may adopt a code of regulations for its government, not inconsistent with the Constitution and laws of the state, which may be adopted or changed by the stockholders or members. In 1891 the statute of Ohio with reference to companies organized to transact the business of life insurance upon the assessment plan was amended by providing that no such company shall issue a certificate for a greater amount than it shall be able to pay from the proceeds of one assessment, and that such companies may change or amend their constitution or by-laws by the assent in writing of a majority of the members, or by a majority of those present in person or proxy, at a meeting held for that purpose. Thereupon, and in the same year, the defendant amended its by-laws, providing that it should have the power to amend its by-laws in the manner therein provided, and in the same year it did amend its by-laws by striking therefrom the Period and Rate Table con-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

tained in section IV, article 3, and adopted an entirely different table of assessments, based upon a different plan. The notices of assessment contain substantially the provision of the by-laws with reference to a forfeiture of the policy and rights thereunder in case of nonpayment, and when notices were sent to the plaintiff for assessment under the amended by-law of 1891 he paid the same. In 1907 the defendant adopted an entirely new and different rate of assessments, based upon a different plan, whereby the assessment due from the plaintiff on each $1,000 of insurance would be $67.68 per year, payable quarterly, instead of the payment of $2 upon each death as provided for in his certificate or policy. The plaintiff protested that such change in the by-laws was unlawful and unjust, refused to pay the same, and tendered to the defendant the amount which would be payable under the amended by-laws of 1891, which it refused to receive; and he brings this action, asking that it be adjudged that he has fully performed his contract, that the defendant has violated its contract, that the contract is still in force, and that he is only liable to pay the assessments as required in his original policy.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Reynolds, Stanchfield & Collin (H. H. Rockwell, of counsel), for appellant.

Herbert H. Lovell (Thornton M. Hinkle, on the brief), for respondent.

JOHN M. KELLOGG, J. It is repugnant to the idea of a contract that one of the parties may, at his election, from time to time change the amounts which he is to receive from the other party under the contract, and the consideration which he is to render to the other contracting party; and, if it is possible to make such contract, the language used must permit of no other construction. Ayers v. Order of United Workmen, 188 N. Y. 280, 80 N. E. 1020.

The Period and Rate Table indorsed upon the plaintiff's policy became a part of it, and there is no suggestion in it, or in the policy itself, that that table may be changed. The by-laws deemed material by the defendant were made a part of the policy by indorsing them on the back thereof, and there is no suggestion therein that the defendant had the right to change its by-laws, and in fact it had no by-law permitting such change. Every corporation has the right to make and change its by-laws in a manner not inconsistent with law; but such right does not give it the power to change its written contract, or impose upon a party contracting with it obligations which he never assumed.

It is said that the plaintiff is a member of the corporation, and is therefore an insured and an insurer at the same time. But every contract has at least two parties, who stand as separate entities, each dealing with the other at arms' length. The fact that one of the contracting parties is a stockholder or member of a corporation does not permit the corporation, by an alleged change of its by-laws, to alter the terms or effect of contracts which it has already made. The fact that a contract proves unprofitable, or will bring ruin upon one of the contracting parties, is no reason why the courts can permit the party who has made such an unwise contract to change its terms at will

and make for itself a more profitable contract. A member of a co-partnership, who purchases property of the firm in good faith, cannot be required to pay a greater consideration than that agreed upon, for the reason that the contract is unprofitable to the firm, and· that he is a member of the firm, and is interested in its welfare.

Mock v. Supreme Council, 121 App. Div. 474, 106 N. Y. Supp. 155, and similar cases, are cited by the defendant with confidence. It is not necessary to criticise or refuse to follow the Mock Case. We may distinguish it. The record in that case shows that the defendant society was formed as a fraternal beneficiary organization for the purpose of affording fraternal assistance to its members and establishing a widows' and orphans' benefit fund, from which, upon the death of a member, a sum not exceeding $3,000 may be paid to his dependents. The certificate recited that it was upon the condition that the member complied in the future with the laws, rules, and regulations now governing the council and fund, or that thereafter may be enacted by the Supreme Council to govern said council or fund, and the application for membership stated that the applicant will "conform to and abide by the constitution, laws, rules, and usages of the said council and order now in force or which may hereafter be adopted by the same," and the constitution, laws, and rules then in force contained a provision authorizing an amendment of the by-laws.

In the Mock Case the court distinguished the Ayers Case, supra, Evans v. So. Tier Masonic Relief Ass'n, 182 N. Y. 453, 75 N. E. 317, Beach v. Supreme Tent K. of M., 177 N. Y. 100, 69 N. E. 281, and similar cases, by saying that these cases related to the rights of the insured as such under his contract, and that in the Mock Case the question related to the conduct and rights of the member as a member of a fraternal beneficiary association. The Mock Case rests solely upon the reserved power in the by-laws and in the policy, the fact that the terms of the contract contemplate that the by-laws may be changed and the rights of the parties under it may be altered, and that to a greater or less extent the mortuary provision arising from membership was incidental to the fraternal and social advantages intended to be gained by membership.

Defendant's by-laws required that an applicant for insurance must be of sound mind, of good health, between the ages of 21 and 60 years, and a Knight Templar, Scottish Rite, or Master Mason. An insurance company may select or classify its risks, or may be incorporated for the purpose of accepting only certain specified risks. It may insure lawyers only, or clergymen, Odd Fellows, or Masons; but, when the policy issues, the relations between the company and the person contracted with are those of insurer and insured only. There are no fraternal or social relations created by the membership or the policy. The defendant was organized solely as a life insurance company. There is no suggestion in the policy, or in the by-laws or the application, that the by-laws or the policy may be changed. The statement in the application that the insured will abide by the rules and regulations of the association evidently means the rules and regulations al-

ready in existence, and particularly those which the company had deemed necessary to make a part of the policy.

The payments made by the plaintiff under the amended by-law of 1891 were made under the duress of a threat that his policy would be forfeited unless the same were made. The fact that he has made various payments which he was not legally obliged to make furnishes no reason why he should be required to continue such excessive payments. The payments made do not give the defendant liberty to make new and further exactions. The terms of the contract contained in the policy are free from doubt. It is not a question of construction or interpretation. The illegal payments exacted from the plaintiff cannot operate to estop him from relying upon the plain terms of the original contract and insisting that the by-laws of 1891 and 1907 do not affect his contract.

The defendant. is carrying on business in the state of New York, and under the laws of this state, and has appeared generally in this action, and is defending upon the merits. The court, therefore, has jurisdiction to determine that the alleged amended by-laws do not increase the amounts which plaintiff must pay under his policy, that he has at all times fully performed the contract upon his part, that his policy remains in full force and effect, and that the defendant is in default, and to require the defendant to observe the contract upon its part. Langan v. Supreme Council Am. L. of H., 174 N. Y. 266 at 270, 66 N. E. 932.

It is argued, however, that the court is powerless to compel the nonresident officers of the defendant to perform the contract and to treat the plaintiff as a policy holder. That objection only refers to the manner of enforcing the judgment after it is rendered. The court may be powerless to punish the nonresident officers for contempt if they do not observe its judgment; but while the defendant continues to do business in this state there will. be little difficulty in the enforcement of a proper judgment against it.

The judgment appealed from should therefore be reversed, upon the law and the facts, and a new trial granted, with costs to the appellant to abide the event. All concur, except SMITH, P. J., not voting.