## SUPREME LODGE K. P. v. MIMS. (No. 6997.)

(Court of Civil Appeals of Texas. Dallas. March 14, 1914. On Motion for Rehearing, May 30, 1914.)

1. COURTS (§ 97*) — PRECEDENTS — FEDERAL QUESTIONS—WHAT ARE.

That a mutual benefit society was chartered by a special act of Congress which authorized it to amend its constitution at pleasure, provided the amendment did not conflict with the laws of the United States or any state, did not make the question whether an unreasonable raise in rates constituted a breach of the society's existing contracts one of exclusive federal jurisprudence, so as to render the decisions of the federal courts binding precedents.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 329–333; Dec. Dig. § 97.*]

2. INSURANCE (§ 705*)—MUTUAL BENEFIT SOCIETIES—REORGANIZATION.

Defendant, on its incorporation by a special act of Congress, absorbed the membership and entire insurance business of a prior corporation which had issued certificates to plaintiff and of an unincorporated society which succeeded it, and continually from the date of its incorporation in 1894 to January, 1911, received and accepted dues and assessments from plaintiff; defendant's charter providing that all claims, accounts, debts, things in action, or other matters of business of whatever nature, existing for or against the pre-existing order, should survive and succeed to and against defendant, etc. *Held*, that defendant thereby became liable on such pre-existing contracts and was answerable for a breach thereof.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1840; Dec. Dig. § 705.*]

3. INSURANCE (§ 719*) — MUTUAL BENEFIT SOCIETIES—CONTRACT—BREACH — RAISE IN RATES.

Plaintiff accepted certain mutual benefit certificates in a corporation the constitution of which provided that the supreme lodge had power to alter and amend its constitution and by-laws at will. Plaintiff's contract did not stipulate that the society or defendant, its ultimate successor, might increase the rate of assessment at will, but merely recited that it was issued on condition that plaintiff should pay all monthly assessments as required, and fully comply with the laws governing that rank then in force or that might thereafter be enacted. Plaintiff changed the class of his membership in May, 1885, when he was required to pay $3.60 per month. In 1888 this was raised to $4.50, in 1904 to $4.65, and later to $7.35. Assessments at these rates he continued to pay under protest until January, 1911, when he was notified

that his rate thereafter would be $34.80 per month. This he refused to pay and sued for breach of contract. *Held*, that the laws and amendments passed after plaintiff's contract of insurance was entered into should be regarded as prospective only in their operation, and the reservation of the general power to amend applicable only to the member's duties and obligations as such, and did not authorize a radical change in the terms of his insurance contract, and that such an increase in assessments was a breach of contract.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1855; Dec. Dig. § 719.*]

4. INSURANCE (§ 741*)—MUTUAL BENEFIT SOCIETIES—ILLEGAL ASSESSMENTS—PAYMENT—ESTOPPEL.

That the holder of a mutual benefit certificate pays illegal assessments levied against him in violation of his contract rather than take the chance of having his certificate forfeited does not estop him or his beneficiary to thereafter question the legality of subsequent similar assessments.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 741.*]

5. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—REQUISITES—STATEMENT.

Where a statement under an assignment of error did not show that the alleged errors complained of were made grounds for a motion for new trial, and contained no part of the evidence relating to or bearing on the propositions advanced thereunder, the assignment could not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

6. APPEAL AND ERROR (§ 1050*) — REVIEW — RULINGS ON EVIDENCE—PREJUDICE.

Where, in an action for breach of a mutual benefit certificate issued by defendant's predecessor, defendant's supreme secretary testified that plaintiff in May, 1885, became a fourth-class member of the old corporation to the extent of $3,000 benefit, and fully defined his rights as such, and that the contract was assumed by defendant pursuant to the requisite notice in October, 1910, defendant was not prejudiced by the alleged erroneous admission in evidence of plaintiff's old certificate over the objection that its execution and assumption by defendant were not properly proved.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

On Motion for Rehearing.

7. INSURANCE (§ 743*)—MUTUAL BENEFIT SOCIETIES—CHANGE OF CERTIFICATE—BREACH OF CONTRACT—DAMAGES.

Where plaintiff, holding certificates in a mutual benefit society, applied to change them for a single certificate in another class, and for this purpose signed an application by which he surrendered all his right, title, and interest in and to the certificates to be changed, and thereafter, and after he had become uninsurable, defendant, the successor of the original society, breached the contract by an improper raise in rates, plaintiff was only entitled to recover assessments paid and interest thereon from the date of the change in his certificates.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1888; Dec. Dig. § 743.*]

Appeal from District Court, Dallas County; E. B. Meese, Judge.

Action by S. Mims against the Supreme Lodge Knights of Pythias for breach of a contract of insurance. Judgment for plaintiff, and defendant appeals. Modified on rehearing and affirmed.

Crane & Crane, of Dallas, and H. P. Brown, of Cleburne, for appellant. Cockrell, Gray & McBride, of Dallas (Thomas F. West, of Ft. Worth, of counsel), for appellee.

TALBOT, J. Appellee brought this suit against the appellant May 19, 1911, to recover damages for the breach of a benefit certificate, or contract of insurance, issued to the appellee on the 29th day of May, 1885, by a corporation known as the Supreme Lodge Knights of Pythias of the World. From a judgment in favor of plaintiff, the defendant appealed.

The material facts are substantially as follows: On or about August 5, 1870, a fraternal beneficiary association designated the Supreme Lodge Knights of Pythias of the World was incorporated under and by virtue of an act of Congress of the United States approved May 5, 1870 (16 Stat. 98, c. 80). By the terms of the act of incorporation of said fraternal association, the charter thereof expired on or about the 5th day of August, 1890. The defendant in this case, the Supreme Lodge Knights of Pythias, was incorporated by an act of Congress of the United States approved by the President June 29, 1894 (28 Stat. 96, c. 119) and since said date the appellant continued to act under and by virtue of said original act of incorporation and the amendments thereto, up to the date of this suit, and since said time. Between the date of the expiration of the charter of the old corporation known as the Supreme Lodge Knights of Pythias of the World, which charter expired, as above stated, on the 5th day of August, 1890, and the date of the incorporation and the charter of the appellant in this case, an unincorporated society, known as the Supreme Lodge Knights of Pythias, or Supreme Lodge Knights of Pythias of the World, carried on business under the laws existing in 1890. On April 11, 1879, appellee made his application to the Endowment Rank of the old corporation referred to, chartered in 1870, for certificates of insurance in what was known as the first and second class of said Endowment Rank, and said application contained the following stipulation:

"I hereby agree to conform to and obey the laws, rules, and regulations of the order governing this rank now in force, or that may hereafter be enacted, or submit to the penalties therein contained."

Upon said application two contracts of insurance or benefit certificates, one for the sum of $1,000, and the other for the sum of $2,000, to be paid to plaintiff's wife upon notice and proof of his death and good standing in the rank at the time of his death, were issued to plaintiff on the 30th day of April, 1879. The application upon which these certificates were issued was made a part thereof, and the respective amounts therein agreed to be paid were payable upon condition that the plaintiff paid all assessments to the Endowment Rank as required and a full compli-

ance with all the laws governing said rank "now in force, or that may hereafter be enacted." Each of these certificates also contained the following:

"And it is understood and agreed that any violation of the within mentioned conditions, or the requirements of the laws in force governing the rank, shall render this certificate and all claims null and void, and that the said Supreme Lodge shall not be liable for the above sum, or any part thereof."

On May 7, 1885, plaintiff made application to be transferred to what was known as the fourth class of the Endowment Rank of the corporation, chartered in 1870, and surrendered all his right, title, and interest in and to the two certificates mentioned. There was then issued to plaintiff, on the 29th day of May, 1885, a benefit certificate, wherein—

"in consideration of the representations and declarations made in his application bearing date of April 11, 1879, and his absolute surrender of the certificates heretofore held by him in first and second classes for cancellation, as requested in his application for transfer to the fourth class bearing date of May 7, 1885, all of which is made a part of this contract, and the payment of the prescribed admission fee, and in consideration of the payment hereafter to said Endowment Rank of all monthly payments as required, and the full compliance with all the laws governing this rank, now in force or that may hereafter be enacted and shall be in good standing under said laws, the sum of three thousand dollars will be paid by the Supreme Lodge Knights of Pythias of the World to Mary J. Mims, wife, as directed," etc.

This certificate, like the two first issued, contained the following clause:

"And it is understood and agreed that any violation of the within mentioned conditions, or the requirements of the laws in force governing this rank, shall render this certificate and all claims null and void, and that the said Supreme Lodge shall not be liable for the above sum or any part thereof."

The two certificates issued to plaintiff in 1879 were issued upon what is known as the "post mortem plan," by which, upon death of a member in one of said classes, an assessment was levied upon the remaining members, and out of the proceeds of such assessment the certificate issued was paid. Article 5, § 1, of the laws passed in 1884 by the corporation chartered in 1870 provides:

"In addition to the three classes specified in section 2 of article 4 of this constitution, there shall be a class endowment designated as the fourth class. In said class the benefit to be obtained, may be one thousand dollars, two thousand dollars, or three thousand dollars, at the option of the applicant."

Section 4 provides:

"The endowment fund for the payment of benefits in the fourth class shall be derived from monthly payments by each member, said payments to be for each one thousand dollars of endowment, and to be graded according to the age of the member at the time of making application, and his expectancy of life, the age to be taken at the nearest anniversary of his birthday. So much of the monthly payments as shall equal the actual cost of the endowment shall constitute the endowment fund, and the residue of such monthly payments shall be placed in the reserve fund. Said monthly payments shall be based upon the average expectancy of life of the applicant, and shall continue

the same so long as his membership continues. The said monthly payment for endowment and reserve shall be according to the following table."

Then follows a table of rates varying from ages 21 to 60, inclusive, in which was:

"Age at admission, 42. Cost or amount of endowment fund, 50¢. Amount of reserve, 70¢. Table monthly payments for each one thousand dollars, $1.20."

The plaintiff, at the date of his application in April, 1879, was 42 years old. Section 5 is:

"Until one monthly payment by members holding an equal amount of endowment, less the amount placed in reserve, shall be sufficient to pay the amount of endowment held by a brother, the benefit to be paid in case of death shall be a sum equal to one payment by each member holding an equal amount of endowment, less the amount to be placed in reserve."

Section 7 is:

"The expenses of conducting the business of the fourth class shall be paid out of the reserve fund."

Section 9 is:

"All the laws, forms and business details of the Endowment Rank heretofore made and hereafter enacted shall apply with full force to the fourth class and the members thereof, so far as they are applicable thereto, and so far as they are not changed by the provisions of this article."

In the laws adopted in July, 1888, it is provided:

"Each member of the Endowment Rank shall, on presenting himself for obligation, pay the secretary of the section, in accordance with his age, and the amount of endowment applied for, a monthly assessment as provided in the following table, and shall continue to pay the same amount each month thereafter as long as he remains a member of the Endowment Rank, unless otherwise provided for by the Supreme Lodge Knights of Pythias of the World."

Then follows a table of monthly payments provided for in said laws. Section 3 of said laws provides that special assessments may be made upon all members of the Endowment Rank by the board of control when necessary to meet the liabilities of the rank, and section 17 of said laws is as follows:

"The board are hereby empowered and directed to rerate the members transferred from the first, second and third classes under resolutions passed by the Supreme Lodge at the session of 1884 permitting such members to enter the fourth class at the age they were when becoming members of the first, second and third classes. The board is instructed to rerate this class of membership so as to require them to hereafter pay as of their age when becoming members of the fourth class, said rerating to take effect at such date as the board shall prescribe on and after the 1st day of August, 1888, and the board is further empowered to rerate the present tables of the fourth class, applying it to all members should such action become necessary for the proper protection and perpetuity of the rank."

In July, 1901, at its biannual session, the Supreme Lodge of the defendant passed a law that each applicant for membership in the Endowment Rank should, upon completion of his application for transmission to the board of control, pay the secretary of the section, in accordance with his age, occupa-

tion, and the amount of endowment applied for, a monthly payment as provided in section 5, and that, if accepted, such member should continue to pay, the same amount each month thereafter as long as he remained a member of the Endowment Rank, except as provided in section 6 of the article, or unless otherwise provided for by enactment of the Supreme Lodge or board of control of the Endowment Rank Knights of Pythias of the World. (Said sections 5 and 6 do not, appear in the record.) The plaintiff, upon the expiration of the charter of the old corporation in 1890, paid to the unincorporated society above referred to from the year 1890 up to June, 1894, when defendant herein was incorporated, the dues upon the certificate made the basis of this suit, according to the laws under which said unincorporated society was transacting business, and, after the defendant was incorporated, he paid to it dues and assessments required by it to be paid up to some time in 1910, but there seems to be no direct testimony that plaintiff knew of the unincorporated society or defendant, or had knowledge of the laws of either. The defendant was incorporated in 1894, as stated, by an act of the Congress of the United States, and then acquired and took over the membership, insurance business and all the assets of the said former corporation and unincorporated society. The rate plaintiff was required to pay when he went into the fourth class was $3.60 per month, and in 1888 it was raised to $4.50 per month, in 1894, to $4.65 per month, and in 1901, to $7.35 per month. These raises in the rates were paid by plaintiff, but he swears he paid them under protest. In August, 1910, the defendant, in convention assembled, enacted a law declaring that every member of the fourth class, on January 1, 1911, should be rerated according to his attained age and occupation, and the amount of benefit provided for in his certificate, unless the member should elect to take some one of certain options offered him, and plaintiff was notified that, if he did not elect to take one of said options and desired to continue the amount of his certificate, beginning with the month of January, 1911, and for each month thereafter, his monthly payment would be $34.80. The law then passed also provided that:

"Any member of the fourth class who shall fail to pay, when due, said monthly payment, shall thereby ipso facto cease to be a member and his certificate, with all rights thereunder in said fourth class shall thereby terminate, subject to the provisions of the laws with reference to reinstatement."

Plaintiff declined to accept either of the options tendered him, refused to pay the raised rate of $34.80, and on January 20, 1911, tendered the local secretary at Ft. Worth, where his membership was, $22.05 for the three months of January, February, and March, 1911, at the old rate of $7.35 per month, which tender was made in writing and declined. Plaintiff was then 74 years of age, and uninsurable, it seems, in any other fraternal order. It is provided in the laws passed in 1884 that:

"These laws may be altered, or amended at any regular session of the Supreme Lodge Knights of Pythias by a two-thirds vote."

The amended laws of 1910 contained the further provisions that the right to change, increase, or adjust the schedules of rates in the fourth and fifth classes, respectively, or any of them, is expressly reserved to the Supreme Lodge, as is also the right to apply any such change, increase, or adjusted schedule of rates to all the members as of the date of their adoption, without regard to the date of any member's certificate. This right of adjustment includes the right to advance members without reference to the plan or class of which they are members to their attained age at any time, and apply the new rates applicable thereto when deemed necessary by the Supreme Lodge to carry out the purposes of the insurance department; and further, that no member of the insurance department should have any divisible interest in the funds or properties of the insurance department, and, except as provided for in the laws with respect to the members of the fifth class, there should be no apportionment of any of said funds at any time, etc. The defendant's charter granted in 1894 provides that:

"All claims, accounts, debts, things in action or other matters of business of whatever nature now existing for or against the present Supreme Lodge Knights of Pythias, mentioned in section 1 of this act, shall survive and succeed to and against the body corporate and politic hereby created; provided that nothing contained herein shall be construed to extend the operation of any law which provides for the extinguishing of claims or contracts by limitations of time."

The charter further provides:

"That said corporation shall have a constitution and shall have power to amend the same at pleasure; provided that such constitution or amendments thereof do not conflict with the laws of the United States or of any state."

By an amendment thereto approved February 26, 1907, it is provided that:

"Said corporation shall have the power to take and hold real and personal estate, which shall not be divided among the members of the corporation, but shall descend to their successors for the promotion of the fraternal and benevolent purposes of said corporation."

The plaintiff charged, among other things, that the defendant, by the rerating of the members and raising the dues and assessments required of plaintiff, breached its contract with plaintiff; and he prayed that he have judgment against the defendant for the amount of all dues, assessments, or other sums paid to it, or any of its subsidiary lodges, with interest upon each such payment from its respective date, or for the value of plaintiff's policy at the time of its breach, with interest thereon as allowed by law, for judgment directing the payment to plaintiff by defendant out of its Endowment Rank fund, or any other fund or funds, of defend-

ant into which, upon trial it may be shown the payments to defendants have been made, and for a lien upon said fund, with foreclosure thereof, to the amount of the judgment. After the introduction of the evidence the court instructed the jury peremptorily to return a verdict in favor of plaintiff for the sum of $3,663.35, being the aggregate amount of all payments made by plaintiff upon his certificates issued by the old corporation in 1879, and in 1885, to said old corporation, to the unincorporated society, and to defendant herein, and interest thereon from date of each payment. The jury returned a verdict as directed, and judgment was entered in accordance therewith.

Appellant presents several assignments of error, and urges many propositions thereunder in support of its contention that the trial court erred in directing the jury to return the verdict rendered. We do not regard it necessary to state and discuss seriatim the propositions contended for by appellant, and shall state, without regard to the order in which these propositions appear in the brief, our conclusions, which will sufficiently indicate the questions raised.

[1] 1. We are not aware of any authority supporting the contention of appellant that the question (or any of the questions) presented for decision is to be one of exclusive "federal jurisprudence," and making it incumbent upon this court to follow the rules laid down by the Supreme Court of the United States in determining the rights of the plaintiff, as against the defendant, in this case. It is true that the charter of the defendant was granted by a special act of Congress, which conferred upon the corporation general authority to amend its constitution, at pleasure, provided such amendment did not conflict with the laws of the United States, or of any state, but this fact does not sustain the proposition that such is the character of the questions involved. It may be said, however, in passing, that the conclusion we have reached upon the main question presented for determination is, we think, supported by decisions of both federal and state courts.

[2] 2. The evidence is sufficient to show that the defendant, immediately upon its incorporation, took over and absorbed the membership and entire insurance business of the corporation which issued the policies or contract of insurance involved in this suit, and of the unincorporated society which succeeded it, and that continuously from the date of its incorporation in 1894 up to January, 1911, received and accepted from appellee monthly payment of dues and assessments as a consideration for carrying out his contract of insurance, and these facts rendered it responsible in law for a breach of said contract in the same way and to the same extent as if the contract had been issued in the first instance by it and broken. Evidently defendant contemplated this when it applied for and obtained its charter. Besides, we think the provision in the defendant's charter which is set out in our statement of the facts obligated the defendant to perform the contract of insurance upon which appellee's suit is predicated, and made it liable in damages to appellee for a breach thereof.

3. The contention that the undisputed evidence shows that any claim plaintiff may have had against defendant was barred by the statute of limitation of two years is not sustained. This contention is based upon the assertion that in his original petition the appellee alleged that the *defendant* had issued and executed to appellee the certificates set up in said petition, and that subsequently appellee abandoned said cause of action, and on February 14, 1913, more than two years after the passage of the laws complained of, filed an amended petition, in which he predicated his claim against defendant upon its implied liability to him. It need only be said, in disposing of this contention, that a careful reading and comparing of appellee's original and amended petitions discloses no material difference in the causes of action alleged. Both petitions, upon substantially the same alleged facts showing liability on the part of defendant, seek the same relief, namely, damages for the breach of the written contract set up, as evidenced in part by said contract itself and in part by the laws of the defendant and the corporation making it.

[3] 4. The rerating of appellee, whereby the assessments against him were so greatly increased, was, we believe, unauthorized, and constituted such a repudiation or breach of his insurance contract as entitled him to recover in this action the sums paid upon it. Ericson v. Supreme Ruling Fraternal Mystic Circle, 105 Tex. 170, 146 S. W. 160; American Legion of Honor v. Batte, 34 Tex. Civ. App. 456, 79 S. W. 629; Morton v. Supreme Council of Royal League, 100 Mo. App. 76, 73 S. W. 259; Smythe v. Supreme Lodge Knights of Pythias (D. C.) 198 Fed. 967; Pearson v. Knights Templars & Mason's Life Ind. Ins. Co., 114 Mo. App. 283, 89 S. W. 588; Beach v. Supreme Tent of K. of M., 177 N. Y. 100, 69 N. E. 281; Wright v. Maccabees, 196 N. Y. 391, 89 N. E. 1078, 31 L. R. A. (N. S.) 423, 134 Am. St. Rep. 838; Dowdall v. Supreme Council Catholic Mutual Benefit Ass'n, 196 N. Y. 405, 89 N. E. 1075, 31 L. R. A. (N. S.) 417; Rockwell v. Knights Templars & Masonic Mut. Aid Ass'n, 134 App. Div. 736, 119 N. Y. Supp. 515; Ayers v. Order of United Workmen, 188 N. Y. 280, 80 N. E. 1020.

As has been seen, the plaintiff in his application for the certificates issued to him in 1879 and 1885 agreed to conform to and obey the laws, rules, and regulations of the order governing the Endowment Rank of the old corporation "now in force, or that may hereafter be enacted, or submit to the penalties therein contained"; that the certificates issued to him were conditioned that "in con-

sideration of the payment hereafter to said Endowment Rank of all monthly payments as required, and the full compliance with all the laws governing this rank now in force, or that may hereafter be enacted," there would be paid to Mary J. Mims, plaintiff's wife, the sums therein specified, and declared that it was understood and agreed that any violation of the mentioned conditions therein or the requirements of the laws in force governing said rank should render the certificate void; that in the laws passed in 1884 it is provided that "these laws may be altered or amended at any regular session of the Supreme Lodge Knights of Pythias by a two-thirds vote"; that the amended laws of 1910 provided that "the right to change, increase or adjust the schedules of rates in the fourth and fifth classes, respectively, or any of them, is reserved to the Supreme Lodge, as is also the right to apply any such change, increase or adjusted schedule of rates to all members as of the date of their adoption, without regard to the date of any member's certificate," and that the constitution of the old or original corporation concluded with the provision that "said Supreme Lodge shall have power to alter and amend its constitution and by-laws at will," etc. It is upon these provisions of appellee's certificate and laws of the order that appellant's claim of right to re-rate appellee is predicated, and from time to time, after he became a member, up to and including the last raise in August, 1910, his assessments were gradually increased. But at the time the certificate for $3,000 mentioned in appellee's petition was issued to him he, according to his undisputed testimony, was furnished by the local secretary of the order with a schedule of what the rate of his assessment would be if he went in the fourth class of the Endowment Rank, and this rate of monthly assessment was fixed at $3.60, said assessment being based upon the average expectancy of appellee's life, and was to continue the same so long as his membership continued. The contract of insurance entered into with the appellee did not stipulate that appellant should have the right to increase the rate of assessment against him; and neither the reservation of a general power to amend its by-laws, nor the recitation in said contract to the effect that it was issued upon the condition that the appellee paid to the Endowment Rank "all monthly payments as required and the full compliance with all the laws governing this rank now in force, or that may hereafter be enacted," authorize appellant to increase the rate of assessments, as the record discloses was done. While a fraternal insurance society or association may so amend its constitution and by-laws as to make "reasonable changes in the methods of administration, the manner of conducting its business and the like, no change can be made which will deprive a member of a substantial right conferred expressly or impliedly by the contract itself." And it seems clear

that such a corporation may expressly reserve the right and power to increase the monthly assessments of its members, but such reservation must be so explicitly and clearly stated in the contract itself or in some paper forming a part of the contract that the member insured is fully advised that the terms of the contract he is entering into may be changed by the insurer in that respect. By the terms of the certificate issued to him, and the by-laws fixing the rate of his monthly assessment at the time of its issuance, which became and was a part of said contract, appellee knew what he was obligated to pay and what he was entitled to receive, and under the general reservation to amend its constitution and by-laws and the general stipulation in the contract to the effect that appellee would pay "all monthly payments as required and fully comply with all the laws governing the Endowment Rank, as a condition upon which the money therein specified was to be paid to his beneficiary, no amendment materially changing and impairing the contract as made with him could be enacted or adopted that would be binding upon him. Numerous cases hold to this doctrine, many of which arose in the state of New York.

From the syllabus in Dowdall v. Supreme Council of the Catholic Mut. Ben. Ass'n, supra, we quote the following:

"The defendant, a mutual benefit life insurancee association, issued to plaintiff a certificate of membership therein, upon the condition that he should 'in every particular while a member of said association comply with all the laws, rules, and requirements thereof.' Plaintiff also received a printed book containing the constitution and by-laws of defendant. One of the articles of the constitution provided, in substance, that all members should be assessed according to their age when admitted. The question presented is whether, by subsequent amendment of the constitution or any of the rules or regulations made after the issuance of the certificate, defendant may increase the rate of a single assessment against plaintiff. Held, that the covenant on the part of plaintiff that he would comply with all the laws, rules, and requirements of the association refers only to such as existed at the time he entered into his contract, and that any changes or alterations thereafter made therein, or additions thereto, seeking to modify or alter said contract do not bind him."

In Rockwell v. Knights Templars & Masonic Mut. Aid Ass'n, 134 App. Div. 736, 119 N. Y. Supp. 515, it is said:

"It is repugnant to the idea of a contract that one of the parties may, at his election, from time to time change the amounts which he is to receive from the other party under the contract and the consideration which he is to render to the other contracting party, and, if it is possible to make such contract, the language used must permit of no other construction. * * * The period and rate table indorsed upon the plaintiff's policy became a part of it, and there is no suggestion in it, or in the policy itself, that that table may be changed."

In that case it is further said:

"Every corporation has the right to make and change its by-laws in a manner not inconsistent with law, but such right does not give it the power to change its written contract

or impose upon a party contracting with it obligations which were never assumed."

Morton v. Supreme Council of Royal League, cited above, reviews the authorities upon the subject at considerable length. In that case, after a review of the authorities, the court say:

"The foregoing cases were all decided on the theory that subsequent by-laws, despite the member's agreement to comply with them, cannot defeat or abridge the essential rights created by the policy, but affect only the member's duties as such, not his interests as a contracting party. In all of them we find the same argument here advanced and accepted by some courts that the business experience of companies shows them what regulations ought to prevail, and that it is necessary that they be permitted to avail themselves of the teachings of experience by enacting new regulations, as needed, to bind all members and control all agreements. There is some merit in that argument, and it is pertinent to any legislation respecting contracts. It has not been thought, however, sufficiently meritorious to permit state Legislatures to impair obligations, and we think it is not sufficiently so to permit insurance societies."

This view is approved by our Supreme Court in Ericson's Case, and, adhering to the principle therein announced and as announced in the other cases cited above, it must be here held that the laws and amendments passed after appellee's contract of insurance was entered into were prospective in their operation, and should not be given a retroactive effect; that the reservation by appellant of the general power to amend its constitution and by-laws, and the provisions in appellee's certificates to which we have referred, relate only to the member's duties and obligations as such, and do not authorize a radical change in the terms of his insurance contract, as was attempted to be made by the raised assessments. This being true, it is immaterial that the appellee may have occupied the position of insured and insurer and whether the increase in the rate of appellee's assessments was reasonable or necessary to continue the financial existence of the corporation. In Rockwell v. Knights Templars & Masonic Mut. Aid Ass'n, supra, it is said:

"But every contract has at least two parties who stand as separate entities, each dealing with the other at arm's length. The fact that one of the contracting parties is a stockholder or member of the corporation does not permit the corporation by an alleged change of its by-laws to alter the terms or effect of contracts which it has already made. The fact that a contract proves unprofitable, or will bring ruin upon one of the contracting parties is no reason why the courts can permit the party who has made such an unwise contract to change its terms at will, and make for itself a more profitable contract."

The plea of necessity is never a valid defense against the performance of a contract. Poole v. Supreme Circle, Brotherhood of America (N. J. Ch.) 85 Atl. 821.

[4] We may also add in this connection, without expressly deciding the question, as it is not raised by any specific assignment of error, that the fact that a holder of a certificate issued by a benefit association pays illegal assessments levied against his certificate in violation of his contract, as was done in the case at bar, rather than take the possible chance of having his certificate forfeited, does not estop him or his beneficiary from questioning the legality of subsequent similar assessments. This view is affirmed in the case of Benjamin v. Mutual Reserve Fund, 146 Cal. 34, 79 Pac. 517. In that case the point was made that the member had legalized the insurance company's action in demanding an otherwise illegal assessment by reason of having paid a number of prior such assessments without question or protest, and the court, in holding against the contention, said:

"Assuming this to be true, it affords the association no ground for invoking an estoppel, for at least two reasons. In the first place, the appellant cannot take advantage of its own wrong, which would be the result if its claim of estoppel was sustained. * * * These prior calls were demanded under an implied threat that, unless paid, his policy would be forfeited, and were paid under a moral compulsion. And, as said in Duggans v. Covenant Mutual, 87 Ill. App. 416: 'It certainly cannot be said that Tuttle, in paying previous illegal assessments, acted fraudulently, or that he willfully did anything calculated to mislead others to their injury. When he paid illegal assessments he did so under a moral compulsion and a threat, implied at least, that if he did not pay his certificate would be forfeited, and the provision made for his wife at the time of his death would be thereby lost. Can appellant be permitted to take advantage of its own wrong? We say it cannot.'"

We shall not undertake to review the many cases cited by able counsel for appellant in support of this contention that the rerating of appellee was authorized, and hence not a violation or repudiation of his contract. It will suffice to say that, as we understand, those cases mainly relied on were not followed or were not regarded applicable by our Supreme Court in Ericson v. Supreme Ruling Fraternal Mystic Circle, supra, and that we see no distinction in principle in that case and the case at bar.

5. The measure of damages as fixed by the court in his peremptory instruction to the jury is the correct one in a case of this character. Having breached appellee's insurance contract, appellant is liable to him for the aggregate amount of all premiums or assessments paid under said contract, with legal interest on each payment from the date it was paid. Ericson v. Supreme Ruling, etc., supra; Washington Life Ins. Co. v. Lovejoy, 149 S. W. 398; Black v. Supreme Council, etc. (C. C.) 120 Fed. 580.

[5] 6. The fourth assignment of error is not presented in accordance with the rules, and is not therefore entitled to consideration. The propositions under said assignment are, in substance, to the effect that the court erred in permitting the twofold benefit certificates issued to appellee to be read in evidence: (1) Because there was no proof of their execution; (2) because there was no authority either in the charter of the old

corporation or of the defendant herein for the assumption of said certificates by the defendant; and (3) because the testimony showed that these certificates had been surrendered for a new one issued in 1885. It does not appear in the statement made under this assignment and the propositions urged thereunder that the alleged errors of the court were made grounds for a new trial in a motion filed therefor in the district court, and the statement is otherwise defective, and not in compliance with the rules, in that no part of the evidence relating to or bearing upon the propositions is given. We are simply referred to "preliminary statement, pp. ———— of this brief, and to the statement under propositions under first assignment of error, p. ———— of this brief." The preliminary statement covers 28 pages of the brief, including much matter that does not bear upon the questions raised by the assignment, and the statement under the propositions urged under the first assignment, to which we are referred, covers about 32 pages of the brief, and contains much evidence relating to entirely different questions from those presented in this assignment. To determine whether or not the propositions here contended for are supported by the record, we would have to search the entire evidence stated in the preliminary statement and under the first assignment of error. This we are not required to do.

[6] Practically the same questions, however, are raised by the fifth assignment, which we have concluded to consider with the conclusion reached that the assignment should be overruled. As pointed out by counsel for appellee, the execution of the insurance contract by the old corporation was charged in plaintiff's pleadings, as well as the assumption thereof by defendant, and neither allegation was denied by defendant, under oath. In fact, it occurs to us that defendant, in its pleadings, practically admits the issuance of this contract, and its assumption by it. However, the admission of the contract or certificate could not have so prejudiced appellant as to require a reversal of the case, because the uncontroverted evidence, independent of said contract, shows appellee's rights as fully and practically to the same extent as the contract in question. The supreme secretary of the appellant testified fully that appellee in May, 1885, became a fourth-class member of the old corporation to the extent of $3,000 benefit, and fully defined his rights as such. The execution of said contract and its assumption is sufficiently shown by the evidence of said witness, wherein he testified that the written notice as sent to appellee by appellant in October, 1910, mentioned said contract, giving the appellee's name, the number of the certificate, the amount of the benefit, and the monthly rate then being paid thereon. This and other evidence in the record so fully shows the execution of the certificate or insurance contract and appellant's assumption of it that to reverse this case for want of more direct and positive proof thereof would be highly technical.

7. The assignments complaining of the rejection of certain evidence offered by appellant, the admission of evidence offered by appellee, and the refusal of appellant's requested instruction to the effect that there was no evidence that appellant assumed the payment of the contract of insurance upon which this suit is based disclose no reversible error, and are overruled.

Believing the proper judgment has been rendered in the case, it is affirmed.

### On Motion for Rehearing.

[7] Upon a reconsideration of this case, on appellant's motion for a rehearing, we conclude that the court erred in affirming the judgment of the trial court in awarding appellee, Mims, a recovery for the amount of the payments made upon the certificates or contracts of insurance issued to him in 1879, but which were surrendered for the new certificate or contract issued in 1885. An ingenious argument is made by counsel for appellee in support of their theory that it was not the intention of appellee and the old corporation that the rights of the parties under the certificates of 1879 should be surrendered upon the acceptance by appellee of the certificate issued in 1885, and that such surrender could not take place and a new contract be created, unless there was an actual performance, and not merely the promise to perform the agreement contained in the new certificate, but it is not believed the contention is sound, at least not so under the facts of this case. The application of appellee to enter the fourth class and to receive the certificate issued to him in that class in 1885 in lieu of certificates issued in 1879 in the first class contained the following:

"The undersigned, born on the 6th day of June, 1837, a member in good standing of Sec. No. 278, Endowment Rank K. of P. and holding certificate No. 5383 in first class which is hereto attached, hereby makes application to enter the fourth class, in which I desire to hold an endowment of one thousand dollars, and I hereby surrender all my right, title, and interest in and to the within certificate, the benefit upon my death to be paid as follows: To my wife, Mary J. Mims."

A like application was made when appellee surrendered his certificate for $2,000 in the second class. The certificate appellee received in 1885, in lieu of the certificates mentioned above, and which is sued on in this case, contains, among others, the following stipulation:

"In consideration of the absolute surrender of the certificates heretofore held by him in first and second classes, for cancellation as requested in his application for transfer to the fourth class bearing date of May 7, 1885, and in consideration of the payment hereafter to said Endowment Rank of all monthly payments as required, and the full compliance with all the laws governing this rank, now in force, or that

may hereafter be enacted, and shall be in good standing under said laws, the sum of three thousand dollars will be paid by the Supreme Lodge of Knights of Pythias of the World to Mary J. Mims, as directed by said brother in his application."

These stipulations show, we think, that appellee agreed to surrender and to have canceled his certificates in the first and second classes in consideration of the issuance to him of the certificate in the fourth class, the acceptance of which operated, in the absence of evidence to the contrary, as a discharge and satisfaction of the former certificates of 1879, and an adjustment of all rights thereunder. Supreme Lodge Knights of Pythias v. Neeley, 135 S. W. 1046. It follows that appellee was not entitled to recover the premiums or assessments paid on the certificates issued to him in 1879, and the judgment rendered in his favor for the amount of said assessments and the interest thereon is erroneous, and must be set aside.

We believe the other questions arising on the appeal have been correctly decided. The recent case of Provident Savings Life Assurance Society v. Ellinger, reported in 164 S. W. 1024, is not, under the facts of this case, authority for appellant's contention that the amount of the premiums or assessments paid by appellee, with interest thereon, is not appellee's measure of damages. The record, without contradiction, in the case before us shows that appellee was not reinsurable at the time of the breach of the contract sued on, while in the Ellinger Case it showed that he was. This is an important distinction, differentiating the cases with respect to the rule of damages. Washington Life Ins. Co. v. Lovejoy, 149 S. W. 398. This distinction seems to be recognized in both the Ellinger Case and the Neeley Case, supra. That appellee, Mims, was 74 years of age and uninsurable at the time of the breach of his contract was pleaded and proved, and the fact stands unchallenged by anything appearing in the record sent to this court. Appellee is therefore entitled to recover only the amount of premiums paid since the issuance to him of the certificate in 1885, with interest, and the judgment of the trial court and the judgment of this court heretofore rendered, affirming the judgment of the trial court, will be reformed so as to deduct therefrom the amount of premiums and interest paid on the insurance contracts of 1879. The principal amount of the premiums paid on these contracts, as appears without dispute from the record, is $201, and, while these payments were in all probability made monthly, yet the record does not affirmatively show that fact. The certificates of 1879 were issued on the 30th day of April of that year, and the date of the judgment of the district court is March 14, 1913, a period of little less than 34 years. The rate of interest recoverable and allowed appellee is 6 per cent. per annum, and he agrees in writing in this

court that, in the event we hold he is not entitled to recover the premiums paid on the 1879 contracts, to remit all interest recovered by him in the lower court on said premiums, which amounts to $410, and which, added to the $201, principal, makes $611.

It is therefore ordered that the judgment of the district court and the judgment of this court heretofore rendered at this term, affirming said judgment of the district court, be reformed so as to deduct from said judgments the sum of $611, and that the judgment of the district court, as reformed, stand affirmed; that appellant's motion for a rehearing in all other respects be overruled; and that the costs of this appeal be taxed against appellee.