FRED R. LOCKWOOD, Respondent, *v.* THE EMBALMERS SUPPLY COMPANY, Appellant.

Fourth Department, June 30, 1931.

*Max L. Stolz*, for the appellant.

*Ira P. Betts*, for the respondent.

EDGCOMB, J.   From the middle of March, 1923, until May 17, 1928, when he resigned, plaintiff was employed by the defendant as a traveling salesman, and was paid a commission on all goods sold by him and delivered during the term of his employment. The question to be determined here is whether the plaintiff is also entitled to commissions on goods purchased through him for future delivery, and which were not delivered until after he had tendered his resignation.   The answer to that question depends entirely upon the nature of the contract between the parties.   They are not in accord as to its terms.

Upon entering defendant's employ, a written contract, which is definite and complete in all respects, was signed and executed by the parties.   There is no uncertainty as to its terms.   By it, plaintiff's salary, including expenses, was fixed at the sum of $3,000 a year.   If his sales exceeded an average of $1,000 a month, he was given a bonus at the end of the year of twenty per cent on all business in excess of $1,000 a month.   If, on the other hand, his sales did not average $1,000 a month, defendant was given the option of terminating the salary provision, and compensating the plaintiff for his services and expenses upon a commission basis " on goods sold and delivered and accepted by purchaser," the percentage varying from ten to thirty per cent, depending upon the nature of the goods sold.   The contingency which would arise if the plaintiff left defendant's employ was taken care of by the following provision: " All credit or commission on future orders to cease 30 days from the date that Mr. F. R. Lockwood leaves our employ or is discharged from the employ of The Embalmers' Supply Company.   Future orders are understood by the parties hereto to be orders received for future delivery."

In view of the provision just quoted, plaintiff's cause of action must fall, unless this provision has been abrogated or changed by subsequent negotiations between the parties, because all of the goods, upon the sale of which plaintiff claims to be entitled to

commissions, were actually delivered more than thirty days from the date on which plaintiff left defendant's employ.

The goods which were sold by respondent consist of embalming fluid and other supplies used by undertakers. Most of the embalming fluid was ordered in comparatively large lots for future delivery, the same to be made from time to time, extending over a considerable period, according to the needs of the purchaser.

After working under this contract for a few weeks, plaintiff conceived the idea that he would prefer to receive a straight commission, rather than a salary, and he took up with the defendant the proposition of changing the contract in this regard. Plaintiff's request was acceded to, and the agreement was amended; to what extent is the question to be determined here. Defendant claims that the only change which was made was the abrogation of all reference to a salary, and the putting of plaintiff upon the commission basis specified in said written contract, regardless of how much his sales might aggregate. Plaintiff insists that the agreement was further amended by striking out the provision above quoted, and by providing that respondent should receive commissions on all orders which were taken by him, irrespective of when the goods were delivered.

It is elementary that the parties to an unperformed contract may, by mutual consent, alter, change or modify its terms. Mere negotiations between the parties, however, will not suffice to bring this about. Before that result can be accomplished, the negotiations must have ripened into a mutual, valid and enforcible agreement on the part of both parties to modify the old contract. (*Murray* v. *Harway*, 56 N. Y. 337, 347.)

In his bill of particulars plaintiff states that the agreement under which he seeks to recover in this action was partly oral and partly written. The written modification is found in certain correspondence which passed between the parties. So far as the record shows, plaintiff had no conversation with any officer of the defendant relative to any change in his contract of employment. He did, however, talk the matter over with Mr. Mears, respondent's field manager, before taking the matter up with the defendant.

I find nothing in the letters which passed between the parties which upholds plaintiff's contention that the contract was modified so as to entitle him to full commissions on all orders taken by him, irrespective of the time when the goods were delivered. From this correspondence it is apparent that the written contract was modified only by eliminating the salary provision, and by putting plaintiff on a commission basis, to be figured upon the percentages mentioned in the written contract.

On May 6, 1923, plaintiff wrote the defendant as follows: " I do not believe that with our present financial arrangement I can put forth the right amount of expense necessary and I was wondering if we could not come to some other agreement, whereby I could at least be able to make expenses and keep my family in fair respectable circumstances, while I am working the business to a top notch stage. " I believe I can make more money on a purely commission basis and with this arrangement and a $75.00 per week drawing account, I can eventually work the territory up to a point that will be satisfactory to you as well as myself."

Four days later defendant replied as follows: " We note your preference for a straight commission basis and we believe that in your case the straight commission basis offers the greatest opportunity. As we wrote you two or three days ago if at the end of two or three months time you want to go on a straight commission basis we will be willing to extend to you that privilege. " However, as you and Mr. Mears have previously talked over this same proposition we will commencing May 1st apply the straight commission form of agreement and allow you a drawing account of $75.00 a week."

It will be noted that nothing is said about giving plaintiff commissions on goods which are delivered after his employment ceases. The correspondence simply refers to canceling the provision for a salary, and fixes plaintiff's compensation upon a commission basis. The first compact stands, except in the particulars in which it has been altered. The new agreement consists of the new terms and so much of the old contract as has not been abrogated by the parties. The burden rests on the respondent to show that the original agreement has been modified so as to entitle him to the commissions claimed.

It is true that in its letter to the plaintiff, defendant concludes with a statement that within a day or two it will submit a new form of working agreement on a straight commission basis; embodying a guaranty of $300 a month drawing account. It is also true that this was never done. There is no suggestion that such agreement will contain any change other than that mentioned in the letter. Plaintiff continued to work for defendant for five years without asking for, or even suggesting that such formal contract be sent to him. The parties evidently were content to let the old contract stand, modified by the subsequent agreement between the parties.

The minds of the parties met through their correspondence, and their failure to draw up and sign a new contract does not detract from the effectiveness of their agreement. It is immaterial that

a new working agreement was not submitted and formally executed. The original contract between the parties, as subsequently amended, is binding on them. (*Sanders* v. *Pottlitzer Bros. Fruit Co.*, 144 N. Y. 209; *Disken* v. *Herter*, 73 App. Div. 453; affd., 175 N. Y. 480; *Losche* v. *Hurtig*, 221 App. Div. 775; affd., 250 N. Y. 619; *No. 2 & 4 Roman Ave., Inc.*, v. *Goddard*, 220 App. Div. 138; *Peirce* v. *Cornell*, 117 id. 66.)

As before noted, Mears was the only person connected with the defendant with whom plaintiff talked concerning a modification of his contract. I fail to see how anything said in that conversation gives plaintiff any comfort.

In the first place, Mears had no authority to bind the defendant by any agreement which he might make relating to plaintiff's compensation. Mears was not an officer of the defendant. He was not its general manager, nor its general agent. He was a field manager, possessed of only limited authority. While he looked over prospective salesmen, and selected those whom he thought would prove successful, plaintiff among the rest, he had no authority to make contracts, or to determine the terms upon which they should be employed.

A party dealing with a special agent is bound to know the extent of his authority. Such an agent cannot bind his principal in a matter beyond or outside of the power conferred on him. (*Dudley* v. *Perkins*, 235 N. Y. 448; *Alexander* v. *Cauldwell*, 83 id. 480, 485; *City of Syracuse* v. *Standard Accident Ins. Co.*, 210 App. Div. 165; *Farmers Fund, Inc.*, v. *Tooker*, 207 id. 37, 40; *Wells* v. *Chaffee*, Id. 467; *Allen* v. *St. Lawrence Co. Farmers' Ins. Co.*, 88 Hun, 461.)

This is not a case where defendant held Mears out to plaintiff as possessing the power to change the terms of his contract of employment, and where it would be bound, if plaintiff relied upon such authority. Mears had nothing to do with making the original contract, notwithstanding the fact that he selected the plaintiff out of many applicants. The contract was drawn by defendant at its home office, and mailed to plaintiff. Plaintiff was never led to believe that Mears had any power to act for the defendant in making a binding contract. Defendant never suggested to the plaintiff that he take up with Mears the question of modifying his contract of employment. Plaintiff did that on his own motion. Mears did not mislead the plaintiff as to his authority. He made no attempt whatever to make any new bargain. His talk, at best, was simply advisory. While he said to the plaintiff that he saw no " reason why the house would not allow it," he distinctly told him to take the matter up with the defendant. The correspondence

between the parties shows conclusively that respondent did not consider that he had made any binding arrangement with Mears.

It is urged by the plaintiff that it is highly inequitable that he should be deprived of his commissions on goods ordered through him, simply because they were not delivered until after he had left defendant's employ. He insists that his dissatisfaction with his contract of employment was largely due to this provision in the original agreement. The fact that the contract proved to be unattractive or unprofitable to respondent furnishes no reason why the court should permit him to change its terms, or to insist on a more profitable arrangement for himself. (*Rockwell* v. *Knights Templars & Masonic Mutual Aid Assn.*, 134 App. Div. 736, 740.)

Plaintiff was perfectly competent to make a contract. The so-called equities, the aid of which plaintiff seeks to invoke, have no place here. The parties' rights are fixed by the agreement which they have made, and it is the duty of the court to enforce its provisions.

We fail to see how there is any ambiguity in the contract of employment as amended. That being so, its interpretation is for the court. The conclusion reached below is, in our opinion, erroneous, and cannot be sustained. Plaintiff, under his agreement, is not entitled to commissions on any orders taken by him for future delivery, where the goods were delivered after June 17, 1928.

It is conceded that merchandise ordered through the plaintiff was delivered to the respective purchasers within the thirty days after plaintiff's resignation, and that the commissions on the sale of such merchandise amounted to one hundred and four dollars and forty-five cents. From this sum should be deducted forty-five dollars and sixty-seven cents excess commissions which had been paid plaintiff at the time he left defendant's employ. Defendant is, therefore, indebted to plaintiff in the sum of fifty-eight dollars and seventy-eight cents and interest from June 17, 1928, amounting in all to sixty-nine dollars and forty-seven cents.

The judgment should be reduced to sixty-nine dollars and forty-seven cents and costs. No costs upon this appeal should be allowed to either party.

All concur, except THOMPSON, J., who dissents and votes for affirmance. Present — SEARS, P. J., CROUCH, EDGCOMB, THOMPSON and CROSBY, JJ.

Judgment modified by reducing the amount of the recovery to the sum of sixty-nine dollars and forty-seven cents, and as modified affirmed, without costs of this appeal to either party. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.