R. ADELE SCHAFFNER, Respondent, *v.* THE NEW YORK TRUST COMPANY, as Trustee under the Last Will and Testament of CORTLANDT F. BISHOP, Deceased, Appellant.

First Department, May 8, 1942.

*Mark F. Hughes* of counsel [*Pendennis W. Reed* with him on the brief; *Willkie, Owen, Otis, Farr & Gallagher*, attorneys], for the appellant.

*Everett M. Seixas, Jr.*, of counsel [*Marvin W. Levy* with him on the brief], for the respondent.

DORE, J. Plaintiff in a replevin action, after trial before the court, without a jury, has been adjudged the owner and entitled to possession of a trade acceptance in the sum of $5,415, and also of 200 shares of the common stock of R. G. Dun-Bradstreet Corporation having an agreed value of $7,000. Plaintiff, assignee of one Daniel S. Sickles, will hereinafter be referred to as "Sickles;" defendant, trustee under the last will of Cortlandt F. Bishop, deceased, successor in interest to the executors of the Bishop estate, parties to some of the transactions, will be referred to as the "estate."

By written agreement dated December 6, 1937, and amendment thereto dated March 18, 1938, the estate contracted with the American Art Association-Anderson Galleries, Inc. (hereinafter "Anderson"), for an auction sale of certain rare books owned by the estate. The written contract, as amended, provided for (1) exhibition and sale of the books at Anderson's auction rooms; (2) payment of auction commission by the estate to Anderson; (3) deposit of the net proceeds of the sale in a special account designated "American Art Association-Anderson Galleries, Inc., Bishop Sale Account," requiring the signatures of all three executors for withdrawal; (4) extension of credit to purchasers if approved by the executors; and (5) an accounting by Anderson to the executors.

Before the auction when Sickles asked Anderson if he could buy on credit, he was informed that Anderson would have to obtain express approval of the estate. The estate approved credit of ninety per cent of the purchase price on any books Sickles might

buy. Sickles attended the auction sale on November 15, 1938, bought $18,052.50 worth of the books, paid to Anderson $1,805.50, ten per cent of the purchase price, in cash and signed three trade acceptances dated November 15, 1938, due and payable to Anderson without interest as follows: (1) January 15, 1939, $5,416; (2) March 15, 1939, $5,416; and (3) May 15, 1939, $5,415. Sickles paid the first trade acceptance on its due date. Remittance was made by Anderson to the estate and that trade acceptance was surrendered to Sickles for cancellation.

The second trade acceptance, due March 15, 1939, was not paid until a month after its due date. The extension of time was the result of private arrangements made prior to March 15, 1939, without the knowledge or approval of the estate, by Sickles and another with Anderson concerning the sale of a Raphael Madonna owned by Sickles and his associate jointly, one-third by Sickles and two-thirds by his partner. Sickles authorized Anderson to sell the painting for one-half cash and the balance on sixty days' credit; to pay the second trade acceptance due March 15, 1939, out of Sickles' agreed one-third share received on the sale of the painting; and to pay the third trade acceptance, due May 15, 1939, out of Sickles' said share due sixty days after the sale of the painting. The estate knew nothing of these arrangements concerning the sale of the Raphael and never agreed to or approved any postponement by its agent of payment of the trade acceptances due respectively March 15 and May 15, 1939. Prior to March 15, 1939, Anderson received 200 shares of Dun-Bradstreet's stock from Sickles as collateral against the payment of the remaining two trade acceptances.

About March 15, 1939, a representative of the estate demanded payment from Anderson of the second trade acceptance due that date and was informed not to worry as Sickles had put up collateral. Upon request Anderson delivered the 200 shares to the estate representative who immediately deposited them with defendant trust company as depository.

On April 20, 1939, Anderson for Sickles and his associate sold the Raphael for $60,000 cash, but being in need of funds, Anderson at this time misinformed Sickles, stating that the sale was one-half cash and the balance in sixty days. As a matter of fact the purchase price of $60,000 had been paid to Anderson in full by certified check on April 24, 1939. On April 26, 1939, Anderson remitted to the estate $5,416 in cash, the amount of the note due March 15, 1939, and surrendered such note to Sickles for cancellation. The estate, however, had no knowledge that such moneys were part of the proceeds of the sale of the Raphael, and continued to hold the 200 shares as collateral.

When the third trade acceptance for $5,415, due May 15, 1939, was not paid by Sickles at its due date, Anderson sent it to its bank for collection and caused it to be protested. It was returned marked " Not sufficient funds." Shortly thereafter the estate made demand upon the attorney for Sickles for its payment, stating that unless it was paid the collateral would be sold. Then Sickles' attorney claimed that the trade acceptance had been paid by reason of Anderson's collection of the cash for the sale of the painting. On August 14, 1939, Anderson went into bankruptcy. On October 3, 1939, Sickles through plaintiff, as assignee, brought this replevin action for return of the shares and the trade acceptance.

Trial Term granted plaintiff judgment, being of the opinion that Anderson was authorized to collect for the estate and did collect and that, therefore, the estate had been paid.

By arrangement of the parties the collateral has been sold for $7,000 to be held without interest by defendant trust company pending the outcome of this action. If defendant prevails, the amount of the trade acceptance with interest from its due date will be paid from the $7,000 and the balance if any returned to Sickles together with the note itself for cancellation; if plaintiff wins, Sickles will receive the $7,000 and the third trade acceptance.

Stripped of unnecessary details, the agreement between Anderson and the estate was an auction sale contract to sell the estate's books, collect the purchase price, and pay it over to the seller. Sickles had also made Anderson his own agent in a different transaction to collect the proceeds of the sale of his painting with further instructions to Anderson, as his agent, to use Sickles' share of such sale in payment of his debt to the estate. There was, therefore, a dual agency on Anderson's part. The practical question on appeal is: Which of two innocent parties, Sickles or the estate, shall suffer because Anderson, who was in different aspects agent for each, proved faithless to one of them? On the unique state of facts presented apparently there is no case exactly in point.

Plaintiff contends that Anderson as defendant's agent received the cash proceeds of the sale of the painting, to be applied in payment of Sickles' obligations to the estate; that as soon as this cash was so received, the obligation was paid; and that Anderson's keeping the cash was a wrong against the estate as principal, and should not be charged to Sickles as such. Plaintiff relies on a number of cases in other jurisdictions, not here controlling; and while we believe they are distinguishable, we think it unnecessary on the analysis hereinafter made to distinguish them seriatim.

It is true Anderson was the estate's agent to receive payment for sale of the books. But Anderson was not and could not be the

estate's agent to collect the proceeds of the sale of the painting as to which the estate had no knowledge and gave no authority whatever. In collecting such proceeds, Anderson was acting as Sickles' agent and not the agent of the estate. Accordingly when Anderson kept one-half of the cash from the sale of the picture and falsely represented to Sickles that only half had been paid in cash, it was breaching its agency with Sickles, not its agency with the estate, and the loss ensuing should be charged to Sickles as principal.

That Anderson breached its duty to Sickles is evidenced by the fact that it failed to credit Sickles with the final balance of the payment for the painting although it had the proceeds with which to do so. When the final trade acceptance became due on May 15, 1939, Anderson sent it to the bank for collection and caused it to be protested for non-payment. Mere instructions by Sickles to Anderson to apply his funds from the sale of the painting to his debt to the estate were not enough. There should be at least some act indicating application of the fund for that purpose, such as crediting the principal's account. No evidence is adduced that the balance was ever applied to the payment on Anderson's books or of a charge to Sickles' account and a credit to the estate's account of the amount due on the note of May fifteenth. That note was neither marked paid nor returned to Sickles as it should have been if it were paid; in fact it was, as indicated, protested for non-payment.

The written agreement of December 6, 1937, with the amendment dated March 18, 1938, appointed Anderson agent of the estate for the specific, special and limited purpose therein stated and not otherwise. Sickles knew or should have known that Anderson was not the principal but merely an agent with limited and prescribed authority and powers. By established law Sickles was bound at his peril to ascertain the limits of the power and authority of such agent. Authority to receive payment is not authority to extend or change the time or terms of payment. (*Dudley* v. *Perkins*, 235 N. Y. 448, 455; *Ritch* v. *Smith*, 82 id. 627; *Whiton* v. *Spring*, 74 id. 169, 174; *Everdell* v. *Carrington*, 154 App. Div. 500.) Sickles defaulted in his written obligation as expressed by his trade acceptance due May 15, 1939, and is not exculpated from paying the estate because in misplaced confidence he made private arrangements with Anderson for the payment in a manner and at a date other than that prescribed by the estate and his own obligation.

Sickles' instructions to Anderson as his own agent to apply a credit balance to meet his debt to the estate was ignored by his agent; it was never so applied. The estate, therefore, has never

been paid and now has the right to apply the collateral to the satisfaction of the debt to secure which it was pledged.

The judgment appealed from should be reversed, with costs, and judgment entered dismissing the complaint on the merits in accordance with this opinion, with costs.

MARTIN, P. J., TOWNLEY, GLENNON and UNTERMYER, JJ., concur.

Judgment unanimously reversed, with costs, and complaint dismissed, with costs. Settle order on notice.